# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:18–cv–02133–RJL</u>

| | |
|---|---|
| ASSOCIATION FOR COMMUNITY AFFILIATED PLANS et al v. UNITED STATES DEPARTMENT OF TREASURY et al | Date Filed: 09/14/2018 |
| | Date Terminated: 07/19/2019 |
| Assigned to: Judge Richard J. Leon | Jury Demand: None |
| Demand: $0 | Nature of Suit: 890 Other Statutory Actions |
| Cause: 05:0706 Judicial Review of Agency Actions | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

| | | |
|---|---|---|
| **ASSOCIATION FOR COMMUNITY AFFILIATED PLANS** | represented by | **Andrew John Pincus** |
| | | MAYER BROWN LLP |
| | | 1999 K Street, NW |
| | | Washington, DC 20006 |
| | | (202) 263–3220 |
| | | Fax: (202) 263–5220 |
| | | Email: <u>apincus@mayerbrown.com</u> |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Charles A. Rothfeld** |
| | | MAYER BROWN PLLC |
| | | 1999 K Street, NW |
| | | Washington, DC 20006 |
| | | (202) 263–3233 |
| | | Fax: (202) 263–3300 |
| | | Email: <u>crothfeld@mayerbrown.com</u> |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **NATIONAL ALLIANCE ON MENTAL ILLNESS** | represented by | **Andrew John Pincus** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Charles A. Rothfeld** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **MENTAL HEALTH AMERICA** | represented by | **Andrew John Pincus** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

Charles A. Rothfeld
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**AMERICAN PSYCHIATRIC ASSOCIATION**　　represented by　**Andrew John Pincus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Charles A. Rothfeld
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**AIDS UNITED**　　represented by　**Andrew John Pincus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Charles A. Rothfeld
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES**　　represented by　**Andrew John Pincus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Charles A. Rothfeld
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**LITTLE LOBBYISTS, LLC**　　represented by　**Andrew John Pincus**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Charles A. Rothfeld
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **UNITED STATES DEPARTMENT OF TREASURY** | represented by | **Bradley P. Humphreys**<br>U.S. DEPARTMENT OF JUSTICE<br>Civil Division, Federal Programs Branch<br>1100 L Street, NW<br>Washington, DC 20530<br>(202) 305–0878<br>Fax: (202) 639–6066<br>Email: bradley.humphreys@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Serena Maya Schulz Orloff**<br>U.S. DEPARTMENT OF JUSTICE<br>Civil Division, Federal Programs Branch<br>1100 L Street, NW<br>Washington, DC 20530<br>(202) 305–0167<br>Fax: (202) 616–8470<br>Email: serena.m.orloff@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **U.S. DEPARTMENT OF LABOR** | represented by | **Bradley P. Humphreys**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Serena Maya Schulz Orloff**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES** | represented by | **Bradley P. Humphreys**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Serena Maya Schulz Orloff**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **ALEX M. AZAR, II**<br>*in his official capacity as Secretary of* | represented by | **Bradley P. Humphreys**<br>(See above for address) |

| | | |
|---|---|---|
| *Health and Human Services* | | *LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Serena Maya Schulz Orloff**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **R. ALEXANDER ACOSTA**<br>*in his official capacity as Secretary of Labor* | represented by | **Bradley P. Humphreys**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Serena Maya Schulz Orloff**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **STEVEN T. MNUCHIN**<br>*in his official capacity as Secretary of the Treasury* | represented by | **Bradley P. Humphreys**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Serena Maya Schulz Orloff**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | represented by | **Bradley P. Humphreys**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Serena Maya Schulz Orloff**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **AMERICAN MEDICAL ASSOCIATION** | represented by | **Chad Golder**<br>MUNGER, TOLLES & OLSON LLP<br>1155 F Street, NW<br>7th Floor<br>Washington, DC 20004<br>(202) 220–1100<br>Fax: (202) 220–2300<br>Email: chad.golder@mto.com |

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **AMERICAN COLLEGE OF PHYSICIANS** | represented by | **Chad Golder**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **AMERICAN OSTEOPATHIC ASSOCIATION** | represented by | **Chad Golder**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **AMERICAN ACADEMY OF FAMILY PHYSICIANS** | represented by | **Chad Golder**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **AMERICAN ACADEMY OF PEDIATRICS** | represented by | **Chad Golder**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS** | represented by | **Chad Golder**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **HIV MEDICINE ASSOCIATION** | represented by | **Chad Golder**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **MEDICAL SOCIETY OF THE DISTRICT OF COLUMBIA** | represented by | **Chad Golder**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **AMERICAN CANCER SOCIETY** | represented by | **Joseph R. Palmore**<br>MORRISON & FOERSTER LLP |

2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006–1888
(202) 887–6940
Fax: (202) 887–0763
Email: jpalmore@mofo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James R. Sigel**
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105–2482
(415) 268–6948
Fax: (415) 268–7522
Email: jsigel@mofo.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**AMERICAN CANCER SOCIETY CANCER ACTION NETWORK**      represented by   **Joseph R. Palmore**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James R. Sigel**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**AMERICAN HEART ASSOCIATION**      represented by   **Joseph R. Palmore**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James R. Sigel**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**AMERICAN LUNG ASSOCIATION**      represented by   **Joseph R. Palmore**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James R. Sigel**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**CYSTIC FIBROSIS FOUNDATION**       represented by   **Joseph R. Palmore**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James R. Sigel**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**EPILEPSY FOUNDATION**       represented by   **Joseph R. Palmore**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James R. Sigel**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**GLOBAL HEALTHY LIVING**       represented by   **Joseph R. Palmore**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James R. Sigel**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**HEMOPHILIA FEDERATION OF AMERICA**       represented by   **Joseph R. Palmore**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James R. Sigel**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**LEUKEMIA & LYMPHOMA SOCIETY**       represented by   **Joseph R. Palmore**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James R. Sigel**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**MARCH OF DIMES FOUNDATION**         represented by  **Joseph R. Palmore**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James R. Sigel**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**NATIONAL COALITION FOR**         represented by  **Joseph R. Palmore**
**CANCER SURVIVORSHIP**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James R. Sigel**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**NATIONAL MULTIPLE SCLEROSIS**         represented by  **Joseph R. Palmore**
**SOCIETY**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James R. Sigel**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**AARP FOUNDATION**         represented by  **Kelly R. Bagby**
AARP FOUNDATION LITIGATION
601 E Street, NW
Washington, DC 20049
(202) 434−2103
Fax: (202) 434−2464
Email: kbagby@aarp.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**AARP**                                           represented by  **Kelly R. Bagby**
  (See above for address)
  *LEAD ATTORNEY*
  *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 09/14/2018 | 1 | | COMPLAINT against R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA ( Filing fee $ 400 receipt number 0090–5688441) filed by THE NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES, MENTAL HEALTH AMERICA, LITTLE LOBBYISTS, LLC, NATIONAL ALLIANCE ON MENTAL ILLNESS, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, AIDS UNITED. (Attachments: # 1 Civil Cover Sheet, # 2 Summons – U.S. Department of Treasury, # 3 Summons – U.S. Department of Labor, # 4 Summons – U.S. Department of Health and Human Services, # 5 Summons – Alex M. Azar II, # 6 Summons – R. Alexander Acosta, # 7 Summons – Steven Mnuchin, # 8 Summons – U.S. Attorney for the District of Columbia, # 9 Summons – U.S. Attorney General)(Pincus, Andrew) (Entered: 09/14/2018) |
| 09/17/2018 | | | Case Assigned to Judge Richard J. Leon. (zsb) (Entered: 09/17/2018) |
| 09/17/2018 | 2 | | SUMMONS (8) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachment: # 1 Notice and Consent)(zsb) (Entered: 09/17/2018) |
| 09/17/2018 | 3 | | ENTERED IN ERROR.....SUMMONS (8) Issued Electronically as to R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(zsth) Modified on 9/26/2018 (znmw). (Entered: 09/17/2018) |
| 09/17/2018 | | | NOTICE OF CORRECTED DOCKET ENTRY: Docket Entry 3 Summons Issued Electronically was entered in error; Summonses already issued at Docket Entry 2 . (znmw) (Entered: 09/26/2018) |
| 09/24/2018 | 4 | | Consent MOTION for Briefing Schedule *for Plaintiffs' Motion for a Preliminary Injunction* by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES (Attachments: # 1 Text of Proposed Order)(Pincus, Andrew) (Entered: 09/24/2018) |
| 09/25/2018 | 5 | | NOTICE of Appearance by Serena Maya Schulz Orloff on behalf of All Defendants (Orloff, Serena) (Entered: 09/25/2018) |

| 09/25/2018 | 6 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 9/18/2018. Answer due for ALL FEDERAL DEFENDANTS by 11/17/2018. (Pincus, Andrew) (Entered: 09/25/2018) |
|---|---|---|---|
| 09/25/2018 | 7 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 9/18/2018. (Pincus, Andrew) (Entered: 09/25/2018) |
| 09/25/2018 | 8 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. R. ALEXANDER ACOSTA served on 9/18/2018; ALEX M. AZAR, II served on 9/18/2018; STEVEN MNUCHIN served on 9/18/2018; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES served on 9/18/2018; U.S. DEPARTMENT OF LABOR served on 9/18/2018; UNITED STATES DEPARTMENT OF TREASURY served on 9/18/2018 (Pincus, Andrew) (Entered: 09/25/2018) |
| 09/27/2018 | 9 | | RESPONSE re 4 Consent MOTION for Briefing Schedule *for Plaintiffs' Motion for a Preliminary Injunction* filed by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA. (Orloff, Serena) (Entered: 09/27/2018) |
| 09/28/2018 | 10 | | WITHDRAWN PURSUANT TO 31 NOTICE FILED ON 11/07/2018.....MOTION for Preliminary Injunction by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES (Attachments: # 1 Memorandum in Support, # 2 Harry Brandt Declaration, # 3 David Fassler Declaration, # 4 Paul Gionfriddo Declaration, # 5 Elena Hung Declaration, # 6 Kenneth Janda Declaration, # 7 Angela Kimball Declaration, # 8 George Kolodner Declaration, # 9 Jesse Milan Jr Declaration, # 10 Margaret Murray Declaration, # 11 Text of Proposed Order)(Pincus, Andrew) Modified on 11/9/2018 (zjf). (Entered: 09/28/2018) |
| 10/02/2018 | | | MINUTE ORDER. Upon consideration of the 4 Motion for Order Approving Proposed Agreed–Upon Briefing Schedule for Plaintiffs' Motion for a Preliminary Injunction, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that defendants shall file their response to plaintiffs' preliminary injunction motion no later than 10/15/18 and that plaintiffs shall file their reply no later than 10/22/18. It is further ORDERED that a preliminary injunction hearing shall be set for 10/26/18 at 3:00 PM in Courtroom 18 before Judge Richard J. Leon. SO ORDERED. Signed by Judge Richard J. Leon on 10/2/18. (lcrjl1) (Entered: 10/02/2018) |
| 10/03/2018 | | | Set/Reset Deadlines: Response due by 10/15/2018. Reply due by 10/22/2018. (tb) (Entered: 10/03/2018) |
| 10/05/2018 | 11 | | Consent MOTION for Leave to File *Amicus Curiae Brief* by AMERICAN MEDICAL ASSOCIATION, AMERICAN COLLEGE OF PHYSICIANS, AMERICAN OSTEOPATHIC ASSOCIATION, AMERICAN ACADEMY OF FAMILY PHYSICIANS, AMERICAN ACADEMY OF PEDIATRICS, |

| | | | |
|---|---|---|---|
| | | | AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, THE HIV MEDICINE ASSOCIATION, MEDICAL SOCIETY OF THE DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit Brief of Amici, # 2 Exhibit Proposed Order)(Golder, Chad) (Entered: 10/05/2018) |
| 10/05/2018 | 12 | | NOTICE of Appearance by Joseph R. Palmore on behalf of AMERICAN CANCER SOCIETY, AMERICAN CANCER SOCIETY CANCER ACTION NETWORK, AMERICAN HEART ASSOCIATION, AMERICAN LUNG ASSOCIATION, Cystic Fibrosis Foundation, EPILEPSY FOUNDATION, Global Healthy Living Foundation, Hemophilia Federation of America, Leukemia & Lymphoma Society, March of Dimes, National Coalition for Cancer Survivorship, NATIONAL MULTIPLE SCLEROSIS SOCIETY (Palmore, Joseph) (Entered: 10/05/2018) |
| 10/05/2018 | 13 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– James R. Sigel, :Firm– Morrison & Foerster LLP, :Address– 425 Market Street, San Francisco CA 94105. Phone No. – 415–268–6948. Filing fee $ 100, receipt number 0090–5725780. Fee Status: Fee Paid. by AMERICAN CANCER SOCIETY, AMERICAN CANCER SOCIETY CANCER ACTION NETWORK, AMERICAN HEART ASSOCIATION, AMERICAN LUNG ASSOCIATION, Cystic Fibrosis Foundation, Global Healthy Living Foundation, Hemophilia Federation of America, Leukemia & Lymphoma Society, March of Dimes, NATIONAL MULTIPLE SCLEROSIS SOCIETY, National Coalition for Cancer Survivorship (Attachments: # 1 Declaration Declaration of James R. Sigel, # 2 Text of Proposed Order)(Palmore, Joseph) (Entered: 10/05/2018) |
| 10/08/2018 | 14 | | MOTION for Leave to File *Amicus Brief* by AMERICAN CANCER SOCIETY, AMERICAN CANCER SOCIETY CANCER ACTION NETWORK, AMERICAN HEART ASSOCIATION, AMERICAN LUNG ASSOCIATION, Cystic Fibrosis Foundation, EPILEPSY FOUNDATION, Global Healthy Living Foundation, Hemophilia Federation of America, Leukemia & Lymphoma Society, March of Dimes, NATIONAL MULTIPLE SCLEROSIS SOCIETY, National Coalition for Cancer Survivorship (Attachments: # 1 Supplement Brief of Amici Curiae American Cancer Society et al., # 2 Text of Proposed Order)(Palmore, Joseph) (Entered: 10/08/2018) |
| 10/08/2018 | 15 | | Consent MOTION for Leave to File *Brief of Amici Curiae* by AARP, AARP FOUNDATION (Attachments: # 1 Amicus Brief, # 2 Text of Proposed Order)(Bagby, Kelly) (Entered: 10/08/2018) |
| 10/09/2018 | 16 | | NOTICE of Appearance by Bradley P. Humphreys on behalf of All Defendants (Humphreys, Bradley) (Entered: 10/09/2018) |
| 10/11/2018 | | | MINUTE ORDER granting 13 Motion for Pro Hac Vice Admission of James R. Sigel. It is hereby ORDERED that the motion is GRANTED and that James R. Sigel be, and hereby is, admitted pro hac vice in this case. SO ORDERED. Signed by Judge Richard J. Leon on 10/11/18. (lcrjl1) (Entered: 10/11/2018) |
| 10/11/2018 | | | MINUTE ORDER granting 11 Consent Motion of American Medical Association, et al., for Leave to File a Brief as Amici Curiae in Support of Plaintiffs' Motion for a Preliminary Injunction; 14 Motion for Leave to File Brief of American Cancer Society, et al., as Amici Curiae Supporting Motion for Preliminary Injunction; and 15 Consent Motion of AARP and AARP |

| | | | |
|---|---|---|---|
| | | | Foundation for Leave to File Amici Curiae Brief in Support of Plaintiffs' Motion for Preliminary Injunction. It is hereby ORDERED that the foregoing motions are GRANTED. SO ORDERED. Signed by Judge Richard J. Leon on 10/11/18. (lcrjl1) (Entered: 10/11/2018) |
| 10/11/2018 | 21 | | AMICUS BRIEF by AMERICAN ACADEMY OF FAMILY PHYSICIANS, AMERICAN ACADEMY OF PEDIATRICS, AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, AMERICAN COLLEGE OF PHYSICIANS, AMERICAN MEDICAL ASSOCIATION, AMERICAN OSTEOPATHIC ASSOCIATION, MEDICAL SOCIETY OF THE DISTRICT OF COLUMBIA, HIV MEDICINE ASSOCIATION. (znmw) (Entered: 10/16/2018) |
| 10/11/2018 | 22 | | AMICUS BRIEF by AMERICAN CANCER SOCIETY, AMERICAN CANCER SOCIETY CANCER ACTION NETWORK, AMERICAN HEART ASSOCIATION, AMERICAN LUNG ASSOCIATION, CYSTIC FIBROSIS FOUNDATION, EPILEPSY FOUNDATION, GLOBAL HEALTHY LIVING, HEMOPHILIA FEDERATION OF AMERICA, LEUKEMIA & LYMPHOMA SOCIETY, MARCH OF DIMES FOUNDATION, NATIONAL COALITION FOR CANCER SURVIVORSHIP, NATIONAL MULTIPLE SCLEROSIS SOCIETY. (znmw) (Entered: 10/16/2018) |
| 10/11/2018 | 23 | | AMICUS BRIEF by AARP, AARP FOUNDATION. (znmw) (Entered: 10/16/2018) |
| 10/12/2018 | 17 | | NOTICE , or in the Alternative, Motion to Modify Filing Deadlines by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order)(Humphreys, Bradley) (Entered: 10/12/2018) |
| 10/12/2018 | 18 | | MOTION to Modify Filing Deadlines by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA. (See Docket Entry 17 to view document) (jf) (Entered: 10/15/2018) |
| 10/15/2018 | 19 | | RESPONSE re 10 MOTION for Preliminary Injunction filed by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA. (Attachments: # 1 Affidavit, # 2 Text of Proposed Order)(Orloff, Serena) (Entered: 10/15/2018) |
| 10/15/2018 | 20 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Humphreys, Bradley) (Entered: 10/15/2018) |
| 10/22/2018 | 24 | | ERRATA attaching corrected memorandum of law by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT |

| | | | |
|---|---|---|---|
| | | | OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA. (Attachments: # 1 Exhibit corrected memorandum – redline, # 2 Exhibit corrected memorandum – clean)(Orloff, Serena) (Entered: 10/22/2018) |
| 10/22/2018 | 25 | | REPLY to opposition to motion re 10 MOTION for Preliminary Injunction filed by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES. (Pincus, Andrew) (Entered: 10/22/2018) |
| 10/22/2018 | 26 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Sealed Declaration, # 2 Text of Proposed Order)(Pincus, Andrew) (Entered: 10/22/2018) |
| 10/22/2018 | 27 | | MOTION for Leave to File *Supplemental Declarations* by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES (Attachments: # 1 Palanker Declaration, # 2 Murray Declaration (Filed Under Seal), # 3 Text of Proposed Order)(Rothfeld, Charles) (Entered: 10/22/2018) |
| 10/25/2018 | | | Set/Reset Hearings: Preliminary Injunction Hearing set for 10/26/2018 at 3:00 PM in Courtroom 18 before Judge Richard J. Leon. (jth) (Entered: 10/25/2018) |
| 10/26/2018 | | | Minute Entry for Proceedings held before Judge Richard J. Leon: Motion Hearing held on 10/26/2018 re: Plaintiffs' 10 Motion for Preliminary Injunction. The 10 Motion for Preliminary Injunction was Heard and Taken Under Advisement.(Court Reporter: William P. Zaremba) (jth) (Entered: 10/26/2018) |
| 11/07/2018 | 28 | | MOTION for Briefing Schedule *(Notice of Withdrawal of Motion for a Preliminary Injunction and Motion for Expedited Briefing Schedule)* by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES (Attachments: # 1 Text of Proposed Order)(Pincus, Andrew) (Entered: 11/07/2018) |
| 11/07/2018 | 31 | | NOTICE OF WITHDRAWAL OF MOTION by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES re 10 MOTION for Preliminary Injunction (See Docket Entry 28 to view document) (jf) (Entered: 11/09/2018) |
| 11/09/2018 | 29 | | TRANSCRIPT OF MOTION FOR PRELIMINARY INJUNCTION HEARING PROCEEDINGS before Judge Richard J. Leon held on October 26, 2018; Page |

| | | | |
|---|---|---|---|
| | | | Numbers: 1–79. Date of Issuance: November 9, 2018. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354–3249. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public t erminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 11/30/2018. Redacted Transcript Deadline set for 12/10/2018. Release of Transcript Restriction set for 2/7/2019.(wz) (Entered: 11/09/2018) |
| 11/09/2018 | <u>30</u> | | RESPONSE re <u>28</u> MOTION for Briefing Schedule *(Notice of Withdrawal of Motion for a Preliminary Injunction and Motion for Expedited Briefing Schedule) and Proposed Alternative Schedule* filed by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA. (Attachments: # <u>1</u> Text of Proposed Order)(Orloff, Serena) (Entered: 11/09/2018) |
| 11/09/2018 | <u>32</u> | | REPLY to opposition to motion re <u>28</u> MOTION for Briefing Schedule *(Notice of Withdrawal of Motion for a Preliminary Injunction and Motion for Expedited Briefing Schedule)* filed by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES. (Pincus, Andrew) (Entered: 11/09/2018) |
| 11/12/2018 | | | MINUTE ORDER. Upon consideration of plaintiffs' <u>28</u> Notice of Withdrawal of Motion for a Preliminary Injunction and Motion for Expedited Briefing Schedule, and defendants' response thereto, it is hereby ORDERED that the following schedule shall govern the above–captioned case: (1) pursuant to Local Civil Rule 7(n)(1), defendants shall file a certified list of the contents of the administrative record with the Court and shall serve plaintiffs with a copy of the administrative record on or before December 19, 2018; (2) the parties shall file cross–motions for summary judgment, including references to the administrative record pursuant to Local Civil Rule 7(h)(2), on or before January 11, 2019; (3) the parties shall file any responses thereto on or before January 25, 2019; (4) the parties shall file any replies in support of their cross–motions for summary judgment on or before February 1, 2019; and (5) plaintiffs shall file the joint administrative records appendix as required by Local Civil Rule 7(n)(2) on or before February 8, 2019. It is further ORDERED that a motions |

| | | |
|---|---|---|
| | | hearing on the parties' cross–motions for summary judgment shall be held on February 19, 2019 at 3:00 PM in Courtroom 18 before Judge Richard J. Leon. SO ORDERED. Signed by Judge Richard J. Leon on 11/12/18. (lcrjl1) (Entered: 11/12/2018) |
| 11/13/2018 | | Set/Reset Deadlines/Hearings: Defendants shall file a certified list of the contents of the administrative record with the Court and shall serve plaintiffs with a copy of the administrative record by 12/19/2018; the parties shall file cross–motions for summary judgment, including references to the administrative record pursuant to Local Civil Rule 7(h)(2), by 1/11/2019; the parties shall file any responses thereto by 1/25/2019; the parties shall file any replies in support of their cross–motions for summary judgment by 2/1/2019; and plaintiffs shall file the joint administrative records appendix as required by Local Civil Rule 7(n)(2) by 2/8/2019. A Motions Hearing on the parties' cross–motions shall be held on 2/19/2019 at 3:00 PM in Courtroom 18 before Judge Richard J. Leon. (jth) (Entered: 11/13/2018) |
| 11/19/2018 | 33 | ANSWER to Complaint by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA.(Orloff, Serena) (Entered: 11/19/2018) |
| 12/19/2018 | 34 | NOTICE *of Filing Certified List of Rulemaking Record* by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA (Attachments: # 1 Certified list of rulemaking record)(Orloff, Serena) (Entered: 12/19/2018) |
| 12/31/2018 | 35 | MOTION to Stay *Proceedings in Light of Lapse of Appropriations* by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA (Attachments: # 1 Proposed Order)(Orloff, Serena) (Entered: 12/31/2018) |
| 12/31/2018 | | MINUTE ORDER. Upon consideration of 35 Defendants' Motion to Stay Proceedings in Light of Lapse of Appropriations, it is hereby ORDERED that the Motion is GRANTED and the deadlines for the parties to file their summary judgment briefs in the above–captioned case are hereby STAYED until Congress has restored appropriations to the Department of Justice. It is further ORDERED that, within 14 days of the date of this Order, defendants shall file a status report with the Court addressing any developments bearing on the Department of Justice's ability to litigate this action. SO ORDERED. Signed by Judge Richard J. Leon on 12/31/18. (lcrjl1) (Entered: 12/31/2018) |
| 01/14/2019 | 36 | STATUS REPORT *on Lapse of Appropriations* by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA. (Attachments: # 1 Proposed Order)(Orloff, Serena) (Entered: 01/14/2019) |

| | | | |
|---|---|---|---|
| 01/28/2019 | 37 | | NOTICE *of Restoration of Appropriations* by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA (Orloff, Serena) (Entered: 01/28/2019) |
| 02/01/2019 | 38 | | MOTION to Modify *Briefing Schedule* by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order)(Humphreys, Bradley) (Entered: 02/01/2019) |
| 02/05/2019 | | | MINUTE ORDER. Upon consideration of defendants' 38 Motion to Modify Briefing Schedule, it is hereby ORDERED that the Motion is GRANTED. It is further ORDERED that the following schedule shall govern the above–captioned case: (1) the parties shall file cross–motions for summary judgment on or before February 22, 2019; (2) the parties shall file any responses thereto on or before March 15, 2019; (3) the parties shall file any replies in support of their cross–motions for summary judgment on or before March 22, 2019; and (4) plaintiffs shall file the joint administrative records appendix as required by Local Civil Rule 7(n)(2) on or before March 29, 2019. SO ORDERED. Signed by Judge Richard J. Leon on 2/5/19. (lcrjl1) (Entered: 02/05/2019) |
| 02/06/2019 | | | Set/Reset Deadlines: The parties shall file Cross–Motions for Summary Judgment by 2/22/2019; Responses are due by 3/15/2019; any Replies are due by 3/22/2019; Plaintiffs shall file the joint administrative records appendix as required by Local Civil Rule 7(n)(2) by 3/29/2019. (jth) (Entered: 02/06/2019) |
| 02/22/2019 | 39 | | MOTION for Summary Judgment by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Pincus, Andrew) (Entered: 02/22/2019) |
| 02/22/2019 | 40 | | Cross MOTION for Summary Judgment by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA (Attachments: # 1 Memorandum in Support, # 2 Exhibit Wu Declaration, # 3 Proposed Order)(Orloff, Serena) (Entered: 02/22/2019) |
| 03/01/2019 | 41 | | MOTION for Leave to File *Updated Amicus Curiae Brief Supporting Plaintiffs' Motion for Summary Judgment* by AMERICAN CANCER SOCIETY, AMERICAN CANCER SOCIETY CANCER ACTION NETWORK, AMERICAN HEART ASSOCIATION, AMERICAN LUNG ASSOCIATION, CYSTIC FIBROSIS FOUNDATION, EPILEPSY FOUNDATION, GLOBAL HEALTHY LIVING, HEMOPHILIA FEDERATION OF AMERICA, LEUKEMIA & LYMPHOMA SOCIETY, MARCH OF DIMES FOUNDATION, NATIONAL COALITION FOR CANCER SURVIVORSHIP, NATIONAL MULTIPLE SCLEROSIS SOCIETY |

| | | |
|---|---|---|
| | | (Attachments: # 1 Amicus Curiae Brief in Support of Plaintiffs' Motion for Summary Judgment, # 2 Text of Proposed Order)(Palmore, Joseph) (Entered: 03/01/2019) |
| 03/01/2019 | | MINUTE ORDER. In light of this Court's Minute Order issued on 2/5/2019 establishing the schedule for the filing of cross−motions for summary judgment, it is hereby ORDERED that the Stay in this case entered by order issued on 12/31/2018 is LIFTED. SO ORDERED. By Judge Richard J. Leon on 3/1/2019. (jth) (Entered: 03/01/2019) |
| 03/01/2019 | 42 | Consent MOTION for Leave to File *Brief of Amici Curiae AARP and AARP Foundation in Support of Plaintiffs' Motion for Summary Judgment* by AARP, AARP FOUNDATION (Attachments: # 1 Brief of Amici Curiae AARP and AARP Foundation in Support of Plaintiffs' Motion for Summary Judgment, # 2 Text of Proposed Order Proposed Order)(Bagby, Kelly) (Entered: 03/01/2019) |
| 03/01/2019 | 43 | Consent MOTION for Leave to File *Amici Curiae Brief* by AMERICAN ACADEMY OF FAMILY PHYSICIANS, AMERICAN ACADEMY OF PEDIATRICS, AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, AMERICAN COLLEGE OF PHYSICIANS, AMERICAN MEDICAL ASSOCIATION, AMERICAN OSTEOPATHIC ASSOCIATION, HIV MEDICINE ASSOCIATION, MEDICAL SOCIETY OF THE DISTRICT OF COLUMBIA (Attachments: # 1 Exhibit Brief of Amici, # 2 Exhibit Proposed Order)(Golder, Chad) (Entered: 03/01/2019) |
| 03/15/2019 | 44 | Memorandum in opposition to re 39 MOTION for Summary Judgment filed by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA. (Attachments: # 1 proposed order)(Orloff, Serena) (Entered: 03/15/2019) |
| 03/15/2019 | 45 | Memorandum in opposition to re 40 Cross MOTION for Summary Judgment filed by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES. (Attachments: # 1 Declaration of Andrew A. Lyons−Berg, # 2 Text of Proposed Order)(Pincus, Andrew) (Entered: 03/15/2019) |
| 03/22/2019 | 46 | REPLY to opposition to motion re 40 Cross MOTION for Summary Judgment filed by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA. (Orloff, Serena) (Entered: 03/22/2019) |
| 03/22/2019 | 47 | REPLY to opposition to motion re 39 MOTION for Summary Judgment filed by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES. (Pincus, Andrew) (Entered: 03/22/2019) |

| 03/22/2019 | 48 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Heather J. Foster)(Pincus, Andrew) (Entered: 03/22/2019) |
|---|---|---|---|
| 03/29/2019 | 49 | | JOINT APPENDIX by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES. (Rothfeld, Charles) (Entered: 03/29/2019) |
| 03/29/2019 | 50 | | MOTION to Strike 48 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSH *, or in the alternative, Unopposed Motion for Leave to Submit the Responsive Portion of this Filing as a Sur–Reply in Opposition to Plaintiffs' Motion for Summary Judgment* by R. ALEXANDER ACOSTA, ALEX M. AZAR, II, STEVEN MNUCHIN, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF LABOR, UNITED STATES DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order)(Humphreys, Bradley). Added MOTION for Leave to File on 4/3/2019 (jf). (Entered: 03/29/2019) |
| 04/02/2019 | | | MINUTE ORDER. Upon consideration of the Motions for Leave to File Briefs as Amici Curiae in support of plaintiff's motion for summary judgment, which are pending on the docket as entries 41 , 42 , and 43 , it is hereby ORDERED that the Motions are GRANTED. The Clerk is directed to file on the docket the briefs at entries [41–1], [42–1], and [43–1]. SO ORDERED. Signed by Judge Richard J. Leon on 4/2/19. (lcrjl1) (Entered: 04/02/2019) |
| 04/02/2019 | 51 | | JOINT APPENDIX *(Revised)* by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES. (Rothfeld, Charles) (Entered: 04/02/2019) |
| 04/02/2019 | 53 | | AMICUS BRIEF by AMERICAN CANCER SOCIETY, AMERICAN CANCER SOCIETY CANCER ACTION NETWORK, AMERICAN HEART ASSOCIATION, AMERICAN LUNG ASSOCIATION, CYSTIC FIBROSIS FOUNDATION, EPILEPSY FOUNDATION, GLOBAL HEALTHY LIVING, HEMOPHILIA FEDERATION OF AMERICA, LEUKEMIA & LYMPHOMA SOCIETY, MARCH OF DIMES FOUNDATION, NATIONAL COALITION FOR CANCER SURVIVORSHIP, NATIONAL MULTIPLE SCLEROSIS SOCIETY. (jf) (Entered: 04/09/2019) |
| 04/02/2019 | 54 | | AMICUS BRIEF by AARP, AARP FOUNDATION. (jf) (Entered: 04/09/2019) |

| | | | |
|---|---|---|---|
| 04/02/2019 | 55 | | AMICUS BRIEF by AMERICAN ACADEMY OF FAMILY PHYSICIANS, AMERICAN ACADEMY OF PEDIATRICS, AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, AMERICAN COLLEGE OF PHYSICIANS, AMERICAN MEDICAL ASSOCIATION, AMERICAN OSTEOPATHIC ASSOCIATION, HIV MEDICINE ASSOCIATION, MEDICAL SOCIETY OF THE DISTRICT OF COLUMBIA. (jf) (Entered: 04/09/2019) |
| 04/05/2019 | 52 | | RESPONSE re 50 MOTION to Strike 48 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL I MOTION for Leave to File to Submit the Responsive Portion of this Filing as a Sur–Reply in Opposition to Plaintiffs' Motion for Summary Judgment filed by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES. (Attachments: # 1 Text of Proposed Order)(Pincus, Andrew) (Entered: 04/05/2019) |
| 05/02/2019 | | | MINUTE ORDER. It is hereby ORDERED that a motions hearing on the parties' cross–motions for summary judgment shall be held on May 21, 2019 at 03:00 PM in Courtroom 18 before Judge Richard J. Leon. Signed by Judge Richard J. Leon on 5/2/19. (lcrjl1) (Entered: 05/02/2019) |
| 05/21/2019 | | | Minute Entry for Proceedings held before Judge Richard J. Leon: Motion Hearing held on 5/21/2019 re Plaintiffs' 39 MOTION for Summary Judgment and Defendants' 40 MOTION for Summary Judgment. The 39 40 Motions were Heard and Taken Under Advisement. (Court Reporter: Janice Dickman). (jth) (Entered: 05/21/2019) |
| 05/31/2019 | 56 | | TRANSCRIPT OF PROCEEDINGS before Judge Richard J. Leon held on May 21, 2019; Page Numbers: 1–29. Date of Issuance: May 31, 2019. Court Reporter: Janice Dickman, Telephone number: 202–354–3267, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 6/21/2019. Redacted Transcript Deadline set for 7/1/2019. Release of Transcript Restriction set for 8/29/2019.(Dickman, Janice) (Entered: 05/31/2019) |
| 07/19/2019 | 57 | 23 | MEMORANDUM OPINION. Signed by Judge Richard J. Leon on 7/18/2019. |

| | | | |
|---|---|---|---|
| | | | (jth) (Entered: 07/19/2019) |
| 07/19/2019 | 58 | 63 | ORDER. For the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED that 39 Plaintiffs' Motion for Summary Judgment is DENIED and Defendants' 40 Motion for Summary Judgment is GRANTED. SO ORDERED. Signed by Judge Richard J. Leon on 7/18/2019. (jth) (Entered: 07/19/2019) |
| 07/29/2019 | 59 | 21 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 58 Order on Motion for Summary Judgment,,, 57 Memorandum & Opinion by AIDS UNITED, AMERICAN PSYCHIATRIC ASSOCIATION, ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, LITTLE LOBBYISTS, LLC, MENTAL HEALTH AMERICA, NATIONAL ALLIANCE ON MENTAL ILLNESS, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES. Filing fee $ 505, receipt number 0090−6284194. Fee Status: Fee Paid. Parties have been notified. (Pincus, Andrew) (Entered: 07/29/2019) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, NATIONAL ALLIANCE ON MENTAL ILLNESS, MENTAL HEALTH AMERICA, AMERICAN PSYCHIATRIC ASSOCIATION. AIDS UNITED, THE NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES, LITTLE LOBBYISTS, LLC<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TREASURY, U.S. DEPARTMENT OF LABOR, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, ALEX M. AZAR II, IN HIS OFFICIAL CAPACITY AS SECRETARY OF HEALTH AND HUMAN SERVICES, PATRICK PIZZELLA, IN HIS OFFICIAL CAPACITY AS ACTING SECRETARY OF LABOR, STEVEN MNUCHIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY, UNITED STATES OF AMERICA<br><br>*Defendants*. | Civil Action No. 18-2133 |

## PLAINTIFFS' NOTICE OF APPEAL

Notice is hereby given that all plaintiffs in the above-captioned case appeal to the United States Court of Appeals for the District of Columbia Circuit from an order granting defendants' motion for summary judgment and denying plaintiffs' motion for summary judgment, entered in this action on the 19th day of July, 2019.

Respectfully submitted,

Dated: July 29, 2019

/s/ *Andrew J. Pincus*
Andrew J. Pincus (D.C. Bar No. 370762)
Charles Rothfeld (D.C. Bar No. 367705)
Ankur Mandhania[*] (CA Bar No. 302373)
MAYER BROWN LLP
1999 K Street NW
Washington, D.C. 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Karen W. Lin[**] (NY Bar No. 4827796)
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

---

[*] Member of the California Bar only. Not admitted in the District of Columbia. Practicing under the supervision of firm principals.

[**] Member of the New York Bar only. Not admitted in the District of Columbia. Practicing under the supervision of firm principals.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, *et al.*, | ) ) ) | **FILED** |
| Plaintiffs, | ) ) | **JUL 1 9 2019** |
| v. | ) ) ) | Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |
| UNITED STATES DEPARTMENT OF TREASURY, *et al.*, | ) ) ) | Civil Case No. 18-2133 (RJL) |
| Defendants. | ) ) | |

## MEMORANDUM OPINION
(July _18_, 2019) [Dkt. ## 39, 40]

This is an Administrative Procedure Act ("APA") challenge to an August 3, 2018 final rule ("2018 Rule"), 83 Fed. Reg. 38,212, promulgated by the Departments of Labor, Treasury, and Health and Human Services ("the Departments"). The 2018 Rule redefined "short-term, limited duration insurance" (or "STLDI"), a category of individual health insurance that Congress expressly exempted from individual market regulations in the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and did not address further in the 2010 Affordable Care Act ("ACA"). Plaintiffs are a collection of associations and organizations that directly or through their members offer individual health insurance coverage through ACA-created marketplaces ("insurer plaintiffs"), provide various medical services ("provider plaintiffs"), or purchase ACA-compliant individual health insurance ("consumer plaintiffs"). *See* Compl. [Dkt # 1] at ¶ 15. Plaintiffs claim that the 2018 Rule violates the APA, 5 U.S.C. § 706, by interpreting STLDI

1

in a manner that is contrary to the ACA and/or HIPAA and is otherwise arbitrary and capricious. *Id.* at ¶¶ 97–123.

Pending before me are plaintiffs' and the Departments' cross-motions for summary judgment. *See* Pls.' Mot. for Summ. J. [Dkt. # 39]; Defs.' Mot. for Summ. J. [Dkt. # 40]. Upon consideration of the briefing, the relevant law, and the entire record herein, the Departments' motion for summary judgment is **GRANTED** and plaintiffs' motion for summary judgment is **DENIED**.

## BACKGROUND

The story of STLDI begins in 1996. That was the year that Congress enacted HIPAA, a law designed in part to improve the availability and continuity of health insurance coverage in the individual and group markets. *See* Pub. L. No. 104-191, 110 Stat. 1936. HIPAA amended the Public Health Service Act ("PHS Act") to create federal standards for "individual health insurance coverage." *See* PHS Act § 2741, *codified at* 42 U.S.C. § 300gg-41, *et seq.* In doing so, the law defined "individual health insurance coverage" to mean "health insurance coverage offered to individuals in the individual market, but [that] does not include short-term limited duration insurance." *Id.* § 300gg-91(b)(5). That is, Congress in HIPAA exempted STLDI from individual market regulations. Congress did not, however, define what coverage constitutes STLDI.

HIPAA also imposed several reforms on the individual health insurance market. For those seeking individual policies, the law guaranteed coverage availability and preexisting condition protections to "eligible individual[s]," i.e., persons with "18 or more months" of "creditable coverage," *id.* §§ 300gg-41(a)(1), (b)(1)(A), without any

2

"significant breaks in coverage" lasting 63 or more days, *id.* § 300gg-3(c)(2)(A). HIPAA defined "creditable coverage" to include most forms of health coverage, including STLDI (notwithstanding STLDI's exemption from individual health insurance regulations). *See id.* § 300gg-3(c)(1)(B); H.R. Rep. No. 104-736, at 180 (1996) ("The conferees intend that creditable coverage includes short-term, limited coverage."); 45 C.F.R. § 146.113(a)(1)(ii) (STLDI is a type of "health insurance coverage"). In addition, HIPAA capped the period during which a group health insurer could exclude benefits for preexisting conditions to 12 months from enrollment (or 18 months for late enrollees) and required that the period be "reduced by the aggregate of the periods of creditable coverage" for the individual seeking to participate in the plan. HIPAA, Pub. L. No. 104-191, § 2701(a)(2)–(3). In sum, individuals who changed plans under certain circumstances were afforded day-for-day credit for their previous coverage, which served to protect them in full or in part from benefit denials for preexisting conditions under their new coverage.

With Congress having created and exempted an undefined category of health insurance, the Departments, predictably, stepped in to give STLDI meaning. In April 1997, during the Clinton Administration, the Departments published an interim final rule ("1997 Rule") defining STLDI as "health insurance coverage provided pursuant to a contract with an issuer that has an expiration date specified in the contract (taking into account any extensions that may be elected by the policyholder without the issuer's consent) that is within 12 months of the date such contract becomes effective." 62 Fed. Reg. 16,894,

3

16,928 (Apr. 8, 1997).[1] The Departments during the Bush Administration followed up in 2004 with a final rule ("2004 Rule"), which adopted effectively the same definition as the 1997 Rule without opposition or comment. *See* 69 Fed. Reg. 78,720, 78,748 (Dec. 30, 2004).

In 2010, fourteen years after STLDI's debut in HIPAA, Congress passed the ACA, which overhauled the operation of individual health insurance markets in order "to increase the number of Americans covered by health insurance and decrease the cost of health care." *Nat'l Fed. of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012). Among the ACA's reforms were: (1) "guaranteed issue," requiring insurers to offer coverage to all individuals regardless of health status and to accept every individual who applies for such coverage, *see* 42 U.S.C. § 300gg-1; (2) "community rating," which generally prohibits insurers from charging higher premiums based on a person's medical history or gender, *see id.* § 300gg; (3) a collection of "essential health benefits" that insurers must provide in their plans, *id.* § 300gg-6; (4) the creation of "single risk pools" for individual and small group enrollees, from which insurers must set their premiums, *id.* § 18032(c); (5) the establishment of "Health Benefit Exchanges," which are state-specific online marketplaces where consumers can purchase ACA-compliant "qualified health plans" or "QHPs" (that is, plans that comply with the foregoing requirements), *see id.* §§ 18021, 18031, 18032; and (6) the provision of subsidies for low-income individuals in the form of premium tax credits,

---

[1] The "extension" language in the original STLDI interpretation is complicated, but the parties now agree that the definition permitted *unlimited* policy renewals with the issuer's consent. Hr'g Tr. (May 21, 2019) [Dkt. # 56] at 9, 17, 19. *Cf.* Pls.' Mot. for Summ. J. at 33 ("the pre-ACA STLDI definition did not permit *any* renewal of STLDI plans").

which are designed to help eligible persons purchase QHPs through an ACA Exchange and are tied to the premium charged by a benchmark plan available on the Exchange, as well as to a consumer's household income, *see* 26 U.S.C. § 36B; *id.* § 36B(b)(2). Not among the ACA's reforms was any change to HIPAA's definition of "individual health insurance coverage," which expressly excluded STLDI. *See* 42 U.S.C. § 300gg-91(b)(5). Accordingly, STLDI remained exempt under the ACA from individual health insurance market regulations, including those imposed by the ACA. STLDI also remained statutorily undefined.

The ACA's most well-known feature, of course, is the so-called "individual mandate," which requires individuals to maintain "minimum essential coverage"—e.g., purchasing a QHP on an Exchange, *see* 26 U.S.C. § 5000A(f)(1)(C)—or pay a tax penalty. *See id.* § 5000A(a)–(b). There are statutory exemptions from the penalty, including for those who cannot afford ACA-compliant plans or will suffer hardship in securing them. *See id.* § 5000A(e)(1), (5). But, as of January 1, 2019, those exemptions are effectively moot, as Congress's Tax Cuts and Jobs Act of 2017 ("TJCA") reduced the tax penalty amount to $0 for all individuals, effective at the beginning of this year. *See* Budget Fiscal Year, 2018, Pub. L. No. 115-97 § 11081, 131 Stat. 2054 (2017).

It is not in dispute that after the ACA's reforms took effect in 2014, health insurance premiums began to rise. *See, e.g.*, 83 Fed. Reg. at 38,232 ("[i]ndividual market premiums increased 105 percent from 2013 to 2017, in the 39 states using Healthcare.gov in 2017"). Two years later, in 2016, the Departments during the Obama Administration became "concerned" that individuals were "purchasing [STLDI] coverage as their primary form of

health coverage" and that STLDI issuers might "target[]" "healthier individuals, . . . thus adversely impacting the risk pool for Affordable Care Act-compliant coverage." 81 Fed. Reg. 75,316, 75,317–18 (Oct. 31, 2016). In other words, the Departments were worried that as the cost for ACA-compliant plans rose, more and more healthy individuals would be incented to exit the ACA Exchanges and purchase cheaper health coverage options like STLDI. Accordingly, the Departments adopted a final rule ("2016 Rule") that redefined STLDI "so that the coverage must be less than three months in duration, including any period for which the policy may be renewed." *Id.* at 75,318. The 2016 Rule thus reduced the maximum term and duration of STLDI from less than twelve to less than three months, and it effectively prohibited renewals.

Just days after the 2016 Rule was finalized, American voters elected a new Administration with, to say the least, different views from the previous Administration regarding competition and choice in health insurance markets. On January 20, 2017, President Trump issued an Executive Order stating his Administration's policy "to seek the prompt repeal of the [ACA]" and ordering agencies with authority and responsibilities under the ACA to take all possible legal steps "to minimize the unwarranted economic and regulatory burdens of the Act," provide relief from "regulatory burden[s] on individuals, families, health care providers, health insurers, patients," and maximize "options for patients and consumers." Exec. Order No. 13,765, Minimizing the Economic Burden of the [ACA] Pending Repeal, 82 Fed. Reg. 8351, 8351, Secs. 1, 2, 4 (Jan. 20, 2017). Congress also tried its hand several times at repealing the ACA outright. *See* American Health Care Act of 2017, H.R. 1628, 115th Cong. (2017); Better Care Reconciliation Act

of 2017, S. Amend. 270 (July 25, 2017); Obamacare Repeal Reconciliation Act of 2017, S. Amend. 271, 115th Cong. (July 25, 2017); Healthcare Freedom Act of 2017, S. Amend. 667, 115th Cong. (July 26, 2017). Those efforts failed. All the while, the ACA Exchanges continued to struggle. *See, e.g.*, 83 Fed. Reg. at 38,232 (citing HHS reports showing that "[i]ndividual market premiums increased 105 percent from 2013 to 2017, in the 39 states using Healthcare.gov in 2017, while the average monthly premium for the second-lowest cost silver plan for a 27-year-old increased by 37 percent from 2017 to 2018").

On October 12, 2017, President Trump issued another Executive Order, this time directing the Departments to prioritize efforts to "to expand the availability of and access to . . . STLDI" in order to "promot[e] competition in healthcare markets" and increase consumer choice. *See* Exec. Order No. 13813, Promoting Healthcare Choice and Competition Across the United States, Sec. 1, 82 Fed. Reg. 48,385, 48,385–86 (Oct. 12, 2017). Not surprisingly, the Departments under the Trump Administration responded a few months later with a proposed rule that would return the definition of STLDI to the original twelve-month maximum term that was in place when Congress enacted the ACA in 2010. Short-Term, Limited-Duration Insurance, Proposed Rule, 83 Fed. Reg. 7437 (proposed Feb. 21, 2018).

After receiving comments, the Departments finalized the proposed rule on August 3, 2018. The final rule ("2018 Rule"), effective October 2, 2018, defined STLDI as "health insurance coverage provided pursuant to a contract with an issuer that has an expiration date specified in the contract that is less than 12 months after the original effective date of the contract and, taking into account renewals or extensions, has a duration of no longer

than 36 months in total." 83 Fed. Reg. at 38,212, 38,214–15. In plain English, the 2018 Rule caps the maximum initial term of an STLDI plan at twelve months—i.e., the original definition—and it caps the maximum total duration of an STLDI plan at 36 months—i.e., the maximum initial term plus two renewals.

Plaintiffs[2] filed suit on September 14, 2018—about two weeks before the 2018 Rule took effect—claiming that the new definition of STLDI is contrary to HIPAA and the ACA and/or is arbitrary and capricious, in violation of the APA, 5 U.S.C. § 706(2)(A). *See* Compl. at ¶¶ 97–123.[3] They followed with a motion for preliminary injunction on September 28, 2018, *see* [Dkt. # 10], which was argued before the Court on October 26, 2018, *see* Hr'g Tr. (Oct. 26, 2018) [Dkt. # 29], but subsequently withdrawn by plaintiffs

---

[2] There are seven named plaintiffs: (1) the Association for Community Affiliated Plans ("ACAP"), an association of nonprofit and community-based insurers that provide qualified health coverage to individuals through the ACA marketplaces and thus compete with STLDI issuers for individual enrollees; (2) the National Alliance on Mental Illness, an organization that represents individuals affected by mental illness who typically are unable to purchase STLDI; (3) Mental Health America, a community-based nonprofit that assists individuals living with mental illness; (4) the American Psychiatric Association, whose member psychiatrists provide medical services that are not covered by STLDI; (5) AIDS United, which represents individuals with HIV and healthcare providers who treat them and whose services are not covered by STLDI; (6) the National Partnership for Women & Families, which promotes policies that benefit women and claims that STLDI plans disproportionately harm women in pricing, coverage, and access to care; and (7) the Little Lobbyists, a group of families with children with serious health conditions who rely on ACA-compliant plans and could face higher premiums due to the 2018 Rule. *See* Compl. at ¶ 15.

[3] The Complaint also included claims that the Departments failed to consider regulatory alternatives and the effects of the 2018 Rule's renewability provision, Compl. at ¶¶ 120–21, and failed to comply with their procedural notice-and-comment obligations under the APA, *id.* at ¶¶ 85–89. Those claims are absent from plaintiffs' motion for summary judgment and are therefore abandoned. *See Aliotta v. Bair*, 614 F.3d 556, 562– 63 (D.C. Cir. 2010) (claims raised in complaint may be abandoned at summary judgment).

on November 7, 2018, *see* [Dkt. # 28]. On November 12, 2018, I set an expedited briefing schedule for the parties' cross-motions for summary judgment, but that schedule was soon stalled by the government shutdown. Following the restoration of funding on January 25, 2019, the parties filed their summary judgment motions on February 22, 2019, *see* [Dkt. ## 39, 40], their oppositions on March 15, 2019, *see* [Dkt. ## 44, 45], and their replies on March 22, 2019, *see* [Dkt. ## 46, 47].[4] Plaintiffs filed a revised joint administrative appendix on April 2, 2019. *See* [Dkt. # 51]. Oral argument on the motions was held on May 21, 2019.

## **LEGAL STANDARD**

Summary judgment is the appropriate mechanism for deciding whether, as a matter of law, an "agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Hill Dermaceuticals, Inc. v. FDA*, No. 11-1950, 2012 WL 5914516, at *7 (D.D.C. May 18, 2012). At this stage, courts ordinarily apply the familiar standard in Federal Rule of Civil Procedure 56(a), granting judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." But courts assessing agency actions "sit[ ] as an appellate tribunal," and "[t]he entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal quotation marks omitted).

---

[4] Several amici curiae—among them, the American Medical Association, American Cancer Society, and AARP—filed briefs in support of plaintiffs at the preliminary injunction and summary judgment stages. *See* [Dkt. ## 53, 54, 55].

Under the APA's "default standard" of review, "[a] court must set aside agency action it finds to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001) (quoting 5 U.S.C. § 706(2)(A)). "The 'arbitrary and capricious' standard of review as set forth in the APA is highly deferential," and the Court must therefore "presume the validity of agency action." *Am. Horse Prot. Ass'n v. Yeutter*, 917 F.2d 594, 596 (D.C. Cir. 1990). The Court "is not empowered to substitute its judgment for that of the agency." *Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*, 731 F.Supp.2d 15, 21 (D.D.C. 2010) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)). However, "[t]his deferential standard cannot permit courts to merely to rubber stamp agency actions, nor be used to shield the agency's decision from undergoing a thorough, probing, in-depth review." *Guindon v. Pritzker*, 31 F.Supp.3d 169, 186 (D.D.C. 2014) (internal quotation marks and citation omitted). In the final analysis, the Court must be satisfied that the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (internal quotation marks omitted).

## ANALYSIS

### A. Standing

An analysis of plaintiffs' case begins, as it must, with standing—the "essential and unchanging" predicate to the exercise of judicial power. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing, plaintiffs must show a concrete

10

and particularized injury in fact that is fairly traceable to the 2018 Rule and likely to be redressed by a favorable judicial decision. *Id.* at 560–61. Plaintiffs' self-styled "primary standing contention" is that the insurer plaintiffs—i.e., plaintiff ACAP's member insurers[5]—have standing to challenge the 2018 Rule under the competitor standing doctrine. Pls.' Opp'n to Defs.' Mot. for Summ. J. [Dkt. # 45] at 2. I agree, and, therefore, I need not consider standing as to the remaining members of the plaintiff group, all of whom seek invalidation of the 2018 Rule. *See Comcast Corp. v. FCC*, 579 F.3d 1, 6 (D.C. Cir. 2009) ("'[I]f one party has standing in an action, a court need not reach the issue of the standing of other parties when it makes no difference to the merits of the case.'" (quoting *Ry. Labor Execs.' Ass'n v. United States*, 987 F.2d 806, 810 (D.C. Cir. 1993))); *see also* Pls.' Reply in Supp. of Pls.' Mot. for Summ. J. [Dkt. # 47] at 4 n.4.

The insurer plaintiffs have established an injury in fact under the competitor standing doctrine, which recognizes the economic understanding that market "actors 'suffer [an] injury in fact when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition' against them." *Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010) (quoting *La. Energy & Power Auth. v. FERC*, 141 F.3d 364, 367 (D.C. Cir. 1998)); *see also Canadian Lumber Trade All. v. United States*, 517 F.3d 1319, 1332 (Fed. Cir. 2008) (competitor standing doctrine "relies on economic logic to conclude that a plaintiff will likely suffer an injury-in-fact when the government acts in a way that

---

[5] ACAP has established its associational standing to sue on behalf of "at least one of its members," *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 182 (D.C. Cir. 2017), namely Community Health Choice. *See* Compl. at ¶¶ 24–30; Decl. of Heather J. Foster ("Foster Decl.") [Dkt. # 48-2] at ¶ 3, Table 1.

increases competition or aids the plaintiff's competitors"). The doctrine's "basic requirement" is that the challenger "show an actual or imminent increase in competition, which . . . will almost certainly cause an injury in fact." *Sherley*, 610 F.3d at 73. To do so, the party "must demonstrate that it is a *direct* and *current* competitor whose bottom line may be adversely affected by the challenged government action." *KERM, Inc. v. FCC*, 353 F.3d 57, 60 (D.C. Cir. 2004) (internal quotation marks omitted).

The insurer plaintiffs directly, and currently, compete with STLDI plan providers for enrollees in the individual health insurance market. Indeed, the "entire purpose" of the 2018 Rule "is to promote competition" for individual insurance, which will "inevitably come at the expense of" market competitors, like the insurer plaintiffs, who sell ACA-compliant plans. *See Sorenson Comms., LLC v. FCC*, 897 F.3d 214, 226 (D.C. Cir. 2018). As the Rule recognizes, STLDI provides "an additional choice for many consumers that exists side-by-side with individual market coverage." 83 Fed. Reg. at 38,218. And as the Departments foresaw, expanding the availability of this choice would likely impact the market. Indeed, the agencies predicted that as the STLDI "market grows, . . . in the long term more issuers will sell such coverage, increasing competition and limiting excessive profits." *Id.* at 38,231. Specifically, they anticipated that certain healthier demographics would exit the individual market Exchanges in favor of STLDI, thereby pushing ACA-compliant premiums—for plans offered by, for example, the insurer plaintiffs—upward over time. *Id.* at 38,234–36. Thus, there is no serious question that the 2018 Rule increases competition between ACA-compliant Exchange plans and cheaper STLDI plans over individual enrollees. *See La. Energy & Power*, 141 F.3d at 367 (plaintiff "will be injured

by increased price competition," which establishes an injury in fact); *Sherley*, 610 F.3d at 72 (injury in fact exists where "a seller facing increased competition may lose sales to rivals, or be forced to lower its price or to expend more resources to achieve the same sales, all to the detriment of its bottom line").

The Departments counter that the insurer plaintiffs sell plans in a different market than STLDI. Defs.' Reply in Supp. of Mot. for Summ. J. at 2–10. Putting aside that the 2018 Rule expressly states that STLDI "exists *side-by-side* with individual market coverage," 83 Fed. Reg. at 38,218 (emphasis added), the Departments cite no authority for the proposition that courts should conduct a "product market" analysis prior to applying the competitor standing doctrine. Rather, our Circuit Court has held that plaintiffs face increased competition and thus qualify as direct and current competitors when they compete for a similar or the same economic goal. *See Sorenson Comms.*, 897 F.3d at 222–23, 226; *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 892 F.3d 332, 341 (D.C. Cir. 2018). That is clearly the case here. The Departments take "too narrow a view of what qualifies as participating in the . . . market" at issue in this case. *See Mendoza v. Perez*, 754 F.3d 1002, 1013 (D.C. Cir. 2014).

That the 2018 Rule's "intended effect" is to promote individual market competition itself is likely "sufficient evidence of an 'actual or imminent' increase in competition." *Sorenson Comms.*, 897 F.3d at 226; *see also La. Energy & Power*, 141 F.3d at 367 ("[t]he lifting of [regulatory] restrictions [on competitors] alone is generally sufficient" to establish competitor standing). But here, the insurer plaintiffs have gone beyond allegations and developed a factual record that, for standing purposes, provides adequate confirmation of

increased competition to support competitor standing. Specifically, ACAP has submitted enrollment data for 2018 and 2019 indicating varying degrees of decline in ACA-compliant enrollment in states that have adopted the "less than 12 months" definition of STLDI in the 2018 Rule. *See generally* Foster Decl.[6] At this stage, plaintiffs' submission is sufficient to satisfy the Article III injury requirement. *See Fed. Forest Res. Coal. v. Vilsack*, 100 F.Supp.3d 21, 34 (D.D.C. 2015) (party "at the summary judgment stage . . . must set forth by affidavit or other evidence specific facts" supporting its standing claim).

Second, the increase in competition is "fairly traceable" to the 2018 Rule because the Rule authorizes longer term STLDI plans, and economic actors can be expected to act rationally by offering such plans and, for enrollees, potentially switching to them. *See Honeywell Int'l Inc. v. EPA*, 374 F.3d 1363, 1369 (D.C. Cir. 2004) (per curiam) (agency regulation that "legalizes the entry of a product into a market in which [plaintiff] competes" causes plaintiff injury), *withdrawn in part on other grounds*, 393 F.3d 1315 (D.C. Cir. 2005) (per curiam); *Bldg. Indus. Ass'n of Superior California v. Babbitt*, 979 F.Supp. 893, 899 (D.D.C. 1997). The Departments' argument that traceability to the 2018 Rule is inherently speculative due to the "variable nature of health insurance coverage and cost," Defs.' Mot. for Summ. J. at 17–18, is unavailing in this context, *see Wash. All. of Tech. Workers*, 892 F.3d at 341 (where standing "injury claimed [was] exposure to increased

---

[6] Plaintiffs submitted this enrollment data along with their reply in support of their motion for summary judgment. The Departments moved to strike the submission but alternatively filed a merits response regarding the data's relevance on the issue of standing. *See* [Dkt. # 50]. I deny the Departments' motion to strike and consider the evidence properly before me.

14

competition in the . . . labor market," rejecting defendant agency's "argument that its regulation leaves the hiring decision to the employer"); *Honeywell Int'l*, 374 F.3d at 1369 (rejecting argument that plaintiff's injury was not caused by regulation allowing competing products into market because plaintiff could only "speculat[e] about the purchasing decisions of third parties not before the court"). The insurer plaintiffs have therefore "demonstrate[d] a causal relationship between the final agency action and the alleged injur[y]." *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1160 (D.C. Cir. 2005).

Finally, a favorable outcome in this Court for the insurer plaintiffs would redress the harm caused by the 2018 Rule. All plaintiffs seek invalidation of the Rule, and a Court order doing so would remedy the specific injury alleged—i.e., the increased competition that has resulted from the Rule. *See Wash. All. of Tech. Workers*, 892 F.3d at 341; *Honeywell Int'l*, 374 F.3d at 1369 ("As a favorable opinion of the court could remove the competing [products] from the market, redressability is satisfied . . . ."). Accordingly, the insurer plaintiffs have standing to challenge the 2018 Rule.

### B. Scope of Congressional Delegation

At its core, plaintiffs' merits challenge is based on their view that in promulgating the 2018 Rule, the Departments exceeded the limits that Congress imposed on the agencies when it enacted the ACA. Plaintiffs claim that the ACA's structure and purpose forbid the Departments' interpretation of STLDI, which, they say, was intended to (and allegedly does) create an alternative individual health insurance market beyond the reach of the ACA's reforms. *See, e.g.*, Pls.' Mot. for Summ. J. at 18 (Departments "sought to circumvent" ACA to "creat[e] an alternative health insurance regime"); Pls.' Reply in

15

Supp. of Mot. for Summ. J. at 4 ("we do not mean to 'insinuate' that the Rule is designed to create a new form of primary coverage: we say that outright").

To say the least, the current landscape of judicial review of agency statutory interpretations—that is, the range of analytical approaches available, both within and outside the traditional *Chevron* framework—is varied. Plaintiffs' basic criticism, however, is antecedent to *Chevron*, which applies only when "Congress has delegated interpretive authority to the agency in question." *Prime Time Intern. Co. v. Vilsack*, 930 F.Supp.2d 240, 248 (D.D.C. 2013) (citing *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001) and Cass Sunstein, *Chevron Step Zero*, 92 Va. L. Rev. 187, 190–92 (2006)). If, as plaintiffs argue here, the Departments overstepped their congressionally circumscribed bounds in promulgating the 2018 Rule, they cannot benefit from application of *Chevron*'s deferential framework.

There is, of course, no serious question that Congress delegated to the Departments the authority to define STLDI when it enacted HIPAA in 1996. Congress defined "individual health insurance coverage" to exclude STLDI but made no attempt to dictate the characteristics that mark such plans. *See* PHS Act § 2791(b)(5), *codified* at 42 U.S.C. § 300gg-91(b)(5). The Departments stepped in the following year to define STLDI as plans lasting less than 12 months with unlimited issuer-consented renewals, and they finalized that definition in 2004. *Thirteen years* passed between the 1997 interim rule and the ACA's enactment in 2010. Over that period, the Departments exercised the authority to define STLDI without challenge or resistance. The ACA's passage did not alter this status quo ! In fact, the ACA—which in so many ways constituted a sea change to the provision of

16

individual health insurance in the United States—retained *untouched* HIPAA's exception of STLDI from individual market insurance regulations. *See* 42 U.S.C. § 300gg-91(b)(5). And it was not for another *six years* after the ACA's enactment that the Departments revisited STLDI, in an effort to protect the single risk pools and relieve pressure on the struggling individual Exchange markets. *See* 81 Fed. Reg. 75,316, 75,317–18.

Plaintiffs thus do not, and could not, contend that the Departments exceeded their congressionally delegated power when they defined STLDI in 1997 and 2004 or, more to their liking, in 2016 (although plaintiffs do maintain that the original definition was likely arbitrary and capricious, *see* Pls.' Mot. for Summ. J. at 3–4; Hr'g Tr. (May 21, 2019) [Dkt. # 56] at 9). Plaintiffs therefore appear to agree that Congress "left a gap for [the Departments] to fill," thereby delegating "authority to the agenc[ies] to give meaning to a specific provision of the statute by regulation." *Atl. City Elec. Co. v. FERC*, 295 F.3d 1, 8 (D.C. Cir. 2002).[7]

Accordingly, for plaintiffs to succeed on their claim that the Departments have overstepped the bounds of their delegated authority, there must be something so "extraordinary" about the particular regulatory power exercised in the 2018 Rule—e.g., it implicates "a question of deep 'economic and political significance' that is central to the statutory scheme"—that Congress would not have conferred such power without so stating. *See King v. Burwell*, —— U.S. ——, 135 S.Ct. 2480, 2489 (2015) (quoting *Util. Air*

---

[7] *See also* 42 U.S.C. § 300gg-92 ("The Secretary, consistent with section 104 of [HIPAA], may promulgate such regulations as may be necessary or appropriate to carry out the provisions of this subchapter.").

*Regulatory Grp. v. EPA*, 573 U.S. 302, 324 (2014); *see also City of Arlington v. FCC*, 569 U.S. 290, 321–22 (2013) (Roberts, C.J., dissenting) ("An agency interpretation warrants [*Chevron*] deference only if Congress has delegated authority to definitively interpret a particular ambiguity in a particular manner."). After all, as Justice Scalia colorfully put it, "Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

Plaintiffs have strived mightily to frame the 2018 Rule as such an "extraordinary" administrative action, striking a blow to the heart of the ACA in a manner that is both unprecedented and unworthy of judicial deference. Unfortunately for plaintiffs, neither the law nor the facts supports that conclusion.

As previously noted, the 1996 Congress left it to the Departments to interpret the meaning of STLDI, which is hardly surprising given the agencies' relative expertise in implementing health insurance legislation, *cf. King*, 135 S.Ct. at 2489 (finding it "especially unlikely that Congress would have delegated this decision to the *IRS*, which has no expertise in crafting health insurance policy of this sort"). The Departments quickly did so, and their original definition of STLDI was in place for over a decade before the ACA's enactment. That "interpretation of the law through its implementation color[ed] the background against which Congress . . . legislat[ed]," and "Congress is presumed to preserve, not abrogate," those "established practices and authoritative interpretations of the coordinate branches." *United States v. Wilson*, 290 F.3d 347, 356–57 (D.C. Cir. 2002). Accordingly, the 2010 Congress was presumptively aware of the Departments'

longstanding interpretation when it passed the ACA. *See Feng Wang v. Pompeo*, 354 F.Supp.3d 13, 21–22 (D.D.C. 2018) (Congress adopting "virtually identical language" from prior legislation "was aware that for twenty-five years [the State Department] had interpreted" the prior legislation a specific way). Because Congress chose not to amend HIPAA's exemption of STLDI from individual market reforms or otherwise define (or even reference) the term in the ACA, there is no "evidence of any intent to repudiate" the Departments' original interpretation and no basis to conclude other than that the ACA adopted the Departments' "longstanding administrative construction." *Haig v. Agee*, 453 U.S. 280, 297 (1981); *Feng Wang*, 354 F.Supp.3d at 22. Now, after the Departments briefly narrowed STLDI in 2016—an exercise of regulatory power that plaintiffs do not challenge—the 2018 Rule has largely restored the longstanding construction against which Congress enacted the ACA.

To say the least, this legal background poses a serious hurdle for plaintiffs. While the Supreme Court has, in a select few instances, deemed an agency action "extraordinary" (and thus effectively beyond *Chevron*'s reach), each case involved an expansive and qualitatively unprecedented assertion of authority—a regulatory power grab, so to speak. In some, the Supreme Court rejected the claimed power in part because the agency had historically declined to assert it. The Court, for example, rejected the EPA's assertion of national permitting authority over millions of greenhouse gas-emitting stationary sources because the agency had "discover[ed]" this "unheralded power to regulate a significant portion of the American economy" "in a long-extant statute." *Util. Air Regulatory Grp.*, 573 U.S. at 324 (internal quotation marks omitted). Similarly, the FDA could not claim

broad regulatory power over tobacco products after decades of disavowing such jurisdiction, as Congress would not have delegated implicitly such a "decision of . . . economic and political significance" to an agency that had for years disclaimed that very authority. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000). In other cases, the agency's claim to considerable regulatory power failed because it was rooted in an otherwise prosaic statutory source. *See MCI Telecomm. Corp. v. Am. Telephone & Telegraph Co.*, 512 U.S. 218, 225–31 (1994) (rejecting FCC position that statutory power to "modify" tariff filing requirements in 1934 Communications Act—what the Court called "a subtle device"—conferred authority to render voluntary the otherwise mandatory requirement to file tariffs); *Whitman*, 531 U.S. at 468 (finding "it implausible that Congress would give to the EPA through these modest words the power to determine whether implementation costs should moderate national air quality standards").

This case, by comparison, presents neither an "unheralded" assertion of regulatory authority, nor a "subtle" or "modest" legislative fount. Congress excepted (but left for the Departments to define) an *entire category* of individual health insurance from the strictures it placed on the general individual market. The Departments, not surprisingly, moved quickly to give STLDI a definition that governed for nearly the entirety of its statutory existence. Congress reenacted the STLDI exemption without amending that longstanding definition, and, after a brief hiatus, the Departments have now returned to a substantially similar definition. *Cf. King*, 135 S.Ct. at 2487 (interpreting IRS rule for first time). In this respect, this case resembles *Verizon v. FCC*, wherein our Circuit Court considered a challenge to an FCC regulation "impos[ing] disclosure, anti-blocking, and anti-

20

discrimination requirements on broadband providers." 740 F.3d 623, 628 (D.C. Cir. 2014). The FCC relied on § 706 of the 1996 Telecommunications Act, directing it "to encourage the deployment . . . of advanced telecommunications capability"—including "broadband telecommunications capability"—by taking measures "that promote competition in the local telecommunications market" and "remove barriers to infrastructure development." *Id.* at 635–36 (quoting 47 U.S.C. §§ 1302(a), (d)(1)). According to the FCC, the challenged regulation furthered this mandate by preserving unimpeded innovation in the provision of internet services. *Id.* at 634. Verizon countered that even if § 706 conferred substantive regulatory authority, "the scope of that grant is not so expansive as to permit the [FCC] to regulate broadband providers in the manner" that the regulation had. *Id.* at 635.

Our Circuit Court rejected Verizon's lack-of-authority argument, noting that "when Congress passed section 706(a) in 1996, it did so against the backdrop of the Commission's long history of subjecting" broadband providers "to common carrier regulation." *Id.* at 638. The Court continued, "although regulation of broadband Internet providers certainly involves decisions of great 'economic and political significance,' *Brown & Williamson*, 529 U.S. at 160," there was "little reason given this history to think that Congress could not have delegated some of these decisions to the Commission." *Id.* at 639. In other words, "section 706(a) [wa]s no mousehole." *Id.*; *see also Ass'n of Private Colls. & Univs. v. Duncan*, 870 F.Supp.2d 133, 147 (D.D.C. 2012) (rejecting argument that Department of Education measures of program compliance with statutory "gainful employment" requirement constituted "a policy change so large that Congress could not have meant to authorize it in the statutory language"). The same is true of the STLDI exemption here.

21

In a similar way, the factual record also confirms that the 2018 Rule "is no elephant" either ! *See Verizon*, 740 F.3d at 639. There is no indication in the evidence submitted that the Rule is having or will have the type of impact—substantial exodus from the individual market Exchanges—that would threaten the ACA's structural core.[8] Indeed, it is unclear exactly what impact the 2018 Rule will have on ACA-compliant plan premiums. The evidence of record indicates that since the 2018 Rule went into effect, premiums have remained stable—in fact, 2019 rates are down 1.5 percent overall. *See* Declaration of Jeff Wu ("Wu Decl.") [Dkt. # 40-2] at ¶ 18. Moreover, a large majority (87 percent) of individuals enrolled in Exchange plans receive subsidies that effectively insulate them from premium increases for ACA-complaint coverage. *See id.* at ¶¶ 5–6. Because the subsidies cannot be applied to STLDI premiums, there is little incentive for individual Exchange enrollees to exit the Exchanges and purchase STLDI plans. *See* 83 Fed. Reg. at 38,235–36. For *unsubsidized* enrollees, however, the Departments projected premium increases of approximately one percent in 2019 and five percent by 2028. *Id.* at 38,236. These projections are hardly *de minimis* to the average person, and some proportion of the small minority of unsubsidized enrollees may in fact exit the Exchanges as a result. But for many unsubsidized enrollees, a five-percent premium increase over a decade will not be enough to accept the relative risks inherent in purchasing STLDI, which are well documented in the 2018 Rule, *see id.* at 38,231–34. In any event, the Departments made a "judgment . . . that individuals are in the best position to evaluate the tradeoffs between lower premiums

---

[8] It bears mentioning that the individual markets account for less than five percent of the overall insurance market. *See* Wu Decl. at ¶ 8.

and limitations of" STLDI coverage, *id.* at 38,232, and there is no basis in the record to conclude that this judgment will destabilize the Exchange markets.

Plaintiffs' last-minute submission of enrollment data[9] does not alter this conclusion. Plaintiffs submitted figures indicating that, as of February 2019, eight of ACAP's insurer members have seen enrollment declines—ranging from 2.27 to 49.10 percent—for Exchange policies offered in states that permit STDLI plans to last up to 364 days (as in the 2018 Rule). Foster Decl. at ¶¶ 3–4. By contrast, four of the members' enrollment numbers are up—ranging from 0.30 to 25.64 percent—in states that meaningfully restrict STLDI plan terms. *Id.* at ¶¶ 3, 5.

These data are clearly not enough to show that the 2018 Rule is, in fact, causing any meaningful number of individuals to leave the Exchange markets and purchase STLDI plans. As an initial matter, it is unclear what inference is to be drawn from recent *increases* in enrollment in states that substantially restrict STLDI terms. The status quo ante (the 2016 Rule) limited STLDI plans to less than three months. Thus, evidence of increasing enrollment in states that have effectively maintained the 2016 Rule is at best immaterial; at worst, it undermines any direct correlation between the definition of STLDI and enrollment levels. More importantly, evidence of enrollment *declines* in states that have

_____

[9] As noted above in Section A, plaintiffs' enrollment data is relevant to the standing analysis. The data is also particularly useful under the circumstances in assessing whether the Departments have exceeded the scope of the relevant Congressional delegation. *See, e.g.*, *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (court is permitted to consider evidence outside of the administrative record in "unusual circumstances" (quoting *Tex. Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991)).

adopted the 2018 Rule's longer term is of minimal probative value absent some established nexus between the two variables. "Correlation," as our Circuit Court has reminded, "is not causation." *In re Navy Chaplaincy*, 738 F.3d 425, 429 (D.C. Cir. 2013) (internal quotation marks omitted); *cf. Friends of Mayanot Inst., Inc. v. Iran*, 313 F.Supp.3d 50, 60 (D.D.C. 2018) (declaration insufficient to show financial loss because evidence established only a correlation between variables, "but not necessarily causation"). In addition to a limited sample size of just eight plans, plaintiffs "have made no attempt to control for potential confounding factors, such as," *inter alia*, Congress's zeroing out of the individual mandate tax penalty. *See In re Navy Chaplaincy*, 738 F.3d at 429.[10] That alone negates the data's evidentiary value, as the individual mandate was "[k]ey to the [ACA's] 'interlocking reforms,'" *Cutler v. U.S. Dep't of Health and Human Services*, 797 F.3d 1173, 1175 (D.C. Cir. 2015) (quoting *King*, 135 S.Ct. at 2485), and the disabling of its enforcement mechanism has undoubtedly impacted individuals' enrollment decisions, *see* 42 U.S.C. § 18091(2)(A) (recognizing that without the mandate "some individuals would make an economic and financial decision to forego health insurance coverage"); *King*, 135 S.Ct. at

---

[10] Plaintiffs do cite a projection from the Wakely Consulting Group, which plaintiff ACAP hired to assess the 2018 Rule's effects. Pls.' Opp'n to Defs.' Mot. for Summ. J. at 8; *see* Decl. of Margaret Murray, Ex. B [Dkt. # 10-10] at 16–33. Wakely estimated that, taking into account the zeroing out of the tax penalty, the 2018 Rule could be expected to cause premiums on ACA plans to "increase by 0.7 percent to 1.7 percent and enrollment [to] decrease by 2.7 percent to 6.4 percent in the individual market in 2019." 83 Fed. Reg. at 38,238. The Departments expressly considered Wakely's report in the 2018 Rule and concluded that it indicated that the Rule would "likely only result in a small average increase to premiums in the individual and group markets." *Id.* at 38,239.

2486 ("Congress found that the guaranteed issue and community rating requirements would not work without the [individual responsibility] requirement.").

Without persuasive evidence from the challengers regarding effect or causation, there is *no* basis to conclude that the 2018 Rule is within the category of regulatory actions that should cause courts "to hesitate" before applying the *Chevron* framework. *See King*, 135 S.Ct. at 2489 (quoting *Brown & Williamson*, 529 U.S. at 159). And even if plaintiffs could show causation, any impact from the 2018 Rule is simply of a lesser order of magnitude than what was at stake in *King*. There, the statutory question implicated one of the ACA's "key reforms, involving billions of dollars in spending each year and affecting the price of health insurance for millions of people," and, moreover, involved a regulation promulgated by an agency (the IRS) that lacked any "expertise in crafting health insurance policy." *Id.* at 2488–89. Worse yet, the challengers' interpretation of the provision at issue "would destabilize the individual insurance market in any State with a Federal Exchange, and likely create the very 'death spirals' that Congress designed the Act to avoid." *Id.* at 2493 (citing studies predicting that premiums would increase by as much as 47 percent and enrollment would decrease by as much as 70 percent).

Here, not only is any potential negative impact from the 2018 Rule minimal, but its benefits are undeniable. Because Congress effectively eliminated the individual mandate, relatively healthy Exchange enrollees are no longer choosing between paying ACA-compliant plan premiums or a fine. Their choice now is between paying ACA plan premiums and going uninsured altogether. By modestly (re)expanding the utility of less expensive STLDI plans, the Rule aims to minimize the harm and expense that would result

from these individuals opting to forego health insurance in the face of rising premiums. After all, "the Affordable Care Act's primary aim [was] to induce participation in health insurance plans," *Sissel v. HHS*, 760 F.3d 1, 8 (D.C. Cir. 2014), not use whatever means necessary to press individuals exclusively into ACA-compliant coverage. *See King*, 135 S.Ct. at 2485 (ACA "designed to expand coverage in the individual health insurance market"); *NFIB v. Sebelius*, 567 U.S. 519, 538 (2012) (ACA enacted "to increase the number of Americans covered by health insurance and decrease the cost of health care").

For these reasons, the 2018 Rule does not exceed the regulatory authority that Congress delegated to the Departments to define STLDI as a category of insurance that is exempt from individual insurance regulations. The *Chevron* framework therefore applies.

## C. *Chevron* Step One: Whether the Statutory Construction is Precluded

The first step in the *Chevron* analysis is to determine whether the statute(s) that the Departments interpreted are "ambiguous" or speak "directly . . . to the precise question at issue." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). In other words, I must decide whether Congress has "unambiguously foreclose[d] the agency's interpretation." *Good Fortune Shipping SA v. Comm. of IRS*, 897 F.3d 256, 261 (D.C. Cir. 2018) (quoting *Nat'l Cable & Telecomms. Ass'n v. FCC*, 567 F.3d 659, 663 (D.C. Cir. 2009)). This requires resort to the "traditional tools of statutory interpretation— text, structure, purpose, and legislative history." *Pharm. Research & Mfrs. of Am. v. Thompson*, 251 F.3d 219, 224 (D.C. Cir. 2001); *see also Chevron*, 467 U.S. at 843 n.9. If Congress has spoken directly on the issue, "then the unambiguous intent of Congress must control and the *Chevron* inquiry is over." *Prime Time Intern. Co.*, 930 F.Supp.2d at 248.

Here, there is no serious question that HIPAA and the ACA are "silent or ambiguous with respect to the specific issue" of the meaning of "short-term limited duration insurance," namely the maximum term and duration of STLDI policies. *See Citizens Coal Council v. Norton*, 330 F.3d 478, 481 (D.C. Cir. 2003) (quoting *Chevron*, 467 U.S. at 843). Neither law makes any attempt to give the phrase specific meaning; indeed, the ACA fails to even mention it. Of course, "the absence of a statutory definition does not" in itself "render a [phrase] ambiguous." *Nat. Res. Def. Council v. EPA*, 489 F.3d 1364, 1373 (D.C. Cir. 2007). In this case, however, "nothing about the specific context in which [STLDI] is used or the broader context as a whole . . . compel[s] the conclusion that the phrase has a definite meaning." *ViroPharma, Inc. v. Hamburg*, 898 F.Supp.2d 1, 18 (D.D.C. 2012) (internal quotation marks omitted). And given that multiple other HIPAA and ACA provisions expressly establish time limitations,[11] the Congresses that enacted those laws clearly "knew how to impose" temporal limits "when [they] chose to do so." *Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 176–77, 184 (1994). The absence of any such limits on the term or duration of STLDI here "indicates a deliberate congressional choice with which the courts should not interfere," at least not at this stage of the analysis. *Id.*; *see also Daiichi Sankyo Co. v. Rea*, 12 F.Supp.3d 8, 16 (D.D.C. 2013)

---

[11] *See, e.g.*, HIPAA, Pub. L. No. 104-191, § 701(a) (permitting group plans to exclude preexisting condition coverage within a "6-month period ending on the enrollment date" and "for a period of not more than 12 months"); ACA, Pub. L. No. 111-148, § 1101(d)(2) (defining "eligible individual" as someone who "has not been covered under creditable coverage . . . during the 6-month period prior to the date on which such individual is applying for coverage through the high risk pool").

(reference to subparagraph in one provision indicated that Congress intentionally did not so limit different provision referring to general paragraph).

Plaintiffs nevertheless contend that STLDI's constituent phrases—"short-term" and "limited duration"—unambiguously preclude the 2018 Rule's interpretation. Pls.' Mot. for Summ. J. at 29, 36. I disagree. As to the first phrase, plaintiffs acknowledge, as they must, that "short-term" is "relative," in that a "term" can be "short" "only as it relates to the length of something else." *Id.* at 29 & n.53. The "something else" in this case, plaintiffs assert, "is the length of a standard health insurance plan: one year." *Id.* at 29. Unfortunately for plaintiffs, this is just wishful thinking ! There is scant indication in HIPAA's text, structure, or purpose that Congress specifically intended for the Departments to define "short-term" by reference to a one-year baseline. Even the resource materials cited by plaintiffs show only that health insurance benefit periods are "usually" or "often" one year in length. *Id.* (citing Bureau of Labor Statistics *Definition of Health Insurance Terms* and Medical Mutual *Glossary of Health Insurance Terms*); *see ViroPharma, Inc.*, 898 F.Supp.2d at 19 (rejecting argument that statutory phrase's "common usage in industry transforms it into a clear term"). Again, Congress, had it been so inclined, knew how to impose a 3-, 6-, or 12-month limitation. It did not, and I cannot simply ignore the legislature's choice to use indefinite, flexible phraseology.

That is not to say that plaintiffs' view is an unreasonable one. The "standard" length of a benefit period would be a perfectly sensible benchmark for interpreting "short-term" insurance. However, to resolve this case at *Chevron* step one, I would have to find that plaintiffs' view "is not just 'plausible,' but rather that it is the 'only possible

28

interpretation.'" *Bennett v. Donovan*, 4 F.Supp.3d 5, 9 (D.D.C. 2013) (quoting *Regions Hosp. v. Shalala*, 522 U.S. 448, 460 (1998)); *see also PDK Labs.*, 362 F.3d at 796 (fact "[t]hat a statute is susceptible of one construction does not render its meaning plain if it is also susceptible of another, plausible construction"); *United States v. Nofziger*, 878 F.2d 442, 446–47 (D.C. Cir. 1989) (statute is ambiguous if it can be read in more than one way). That I cannot do. The "short-term" modifier, without more, fails to communicate unambiguously a specific temporal limitation.

Plaintiffs also proclaim unequivocally that, as a matter of statutory plain meaning, STLDI *must* refer to a "one-time, nonrenewable coverage option." Pls.' Mot. for Summ. J. at 36. But if that were the phrase's plain meaning, the "limited duration" qualifier would be mere window dressing ! Consistent with my "duty to give meaning to each [phrase] used by Congress," *Nat. Res. Def. Council*, 489 F.3d at 1373, I must read "short-term" and "limited duration" in a manner that "gives each phrase independent meaning," *Am. Fed. Gov't Emps., AFL-CIO v. Gates*, 486 F.3d 1316, 1323 (D.C. Cir. 2007) (rejecting reading of statutory phrase that would "render[] redundant the second, independent qualification in" provision and "essentially read both qualifications . . . the same way, a highly disfavored interpretive result"). When an insurance policy's "term" and "duration" are viewed as independent features, they are not necessarily coterminous periods of time. Rather, the natural reading of "duration" in this context is the *total* lifespan of the insurance, consisting either of a single term or multiple terms in the case of renewals or other extensions. *See* 83 Fed. Reg. at 38,220 ("'limited-duration' refers to a longer time period than 'short-term,' because . . . a policy's term can be shorter than its duration (if the policy

is renewed or extended)"). Thus, plaintiffs are incorrect in asserting that Congress precluded an interpretation of "limited duration" that encompasses one or more renewals.

Finally, plaintiffs contend that HIPAA's and the ACA's structure and purpose preclude the Departments' chosen definition of STLDI. *See, e.g.*, Pls.' Mot. for Summ. J. at 30 (arguing that 2018 Rule is contradicted by "Congress's purpose" in excepting STLDI from individual market regulations and by the "term's place within the overall HIPAA and ACA schemes"). Taking HIPAA first—it is, after all, the statute in which STLDI appears—plaintiffs argue that the law was intended to protect individuals at risk of coverage loss who might be unable to obtain replacement insurance, and that the STLDI exemption was meant to allow for "brief, gap-filling coverage for people between annual plans who are awaiting commencement of full coverage pursuant to HIPAA's access and portability guarantees." Pls.' Mot. for Summ. J. at 31.[12] Those purposes, however, do not foreclose the Departments' interpretation. HIPAA guaranteed coverage availability and preexisting condition protections to "eligible individual[s]," i.e., those with at least 18 months of "creditable coverage" without any "significant breaks." 42 U.S.C. §§ 300gg-41(a)(1), (b)(1)(A); *id.* § 300gg-3(c)(2)(A). Under the law, "creditable coverage" included STLDI. *Id.* § 300gg-3(c)(1)(B); *see supra* at p.3. HIPAA also afforded individuals day-for-day credit for their prior creditable coverage, which served to reduce the time period over which a group health insurer could exclude benefits for preexisting conditions

---

[12] It is notable that the "gap-filling" understanding of STLDI does not appear to be reflected in HIPAA, the 1997 and 2004 Rules, or the ACA; the 2016 Rule marks its first appearance in the administrative record. *See* 81 Fed. Reg. at 75,317 (STLDI "is designed to fill temporary gaps in coverage").

under the new coverage plan.  *See* HIPAA § 2701(a)(2)–(3).  Accordingly, HIPAA's protections were contingent largely on the amount of unbroken "creditable coverage"— including STLDI—that a policyholder could claim.  This statutory framework makes it is difficult to construe HIPAA, as plaintiffs would, to *permit* unrenewable STLDI plans of less than 3 months but *preclude* STLDI plans of less than 12 months that are renewable for up to 36 months, given that the latter plans would better enable individuals to maintain unbroken "creditable coverage" and access the law's protections.  *See infra* at p.37.  To say the very least, plaintiffs' view is not the "only possible interpretation" of Congress's intent as expressed through HIPAA's structure and purpose.  *See Bennett*, 4 F.Supp.3d at 9 (quoting *Regions Hosp.*, 522 U.S. at 460).

Even if HIPAA is ambiguous, plaintiffs contend, Congress in the ACA "unquestionably foreclosed" the Departments' interpretation by defining "short coverage gap[s]"—which are exempt from the ACA's now-defunct tax penalty—as a "period of less than 3 months."  Pls.' Mot. for Summ. J. at 32 (quoting 26 U.S.C. § 5000(e)(4)).[13]  Of course, Congress's use of specific temporal language with "short coverage gaps" but not

---

[13] It is questionable whether the ACA is relevant to the *Chevron* analysis at all, given that the statute does not reference STLDI but simply reenacts HIPAA's exemption of STLDI plans from individual market regulations.  Courts generally "will not understand Congress to have amended an act by implication unless there is a 'positive repugnancy' between the provisions of the preexisting and newly enacted statutes, as well as language manifesting Congress's 'considered determination' of the ostensible change."  *U.S. Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131, 1141 (D.C. Cir. 2017) (quoting *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 134 (1974)).  There is no indication that the ACA is structurally incompatible with the STLDI exemption or the Departments' original understanding of the term and duration of STLDI plans.  Nevertheless, to provide a complete analysis I will consider plaintiffs' ACA-related arguments.

STLDI is further indication that it intended for the Departments to define the latter. *See supra* at p.27 & n.11. In any case, plaintiffs offer no persuasive reason why STLDI and "short coverage gaps" *must* be given identical meaning. They claim that the ACA's exemption of these short breaks in coverage from the tax penalty demonstrates Congress's view that individuals should go no longer than 3 months without ACA-compliant coverage. *See* Pls.' Mot. for Summ. J. at 32–33. But that position is belied by the same statutory provision on which plaintiffs rely. Although 26 U.S.C. § 5000A does exempt "short coverage gaps" of up to 3 months, it also creates income- and hardship-based exemptions, neither of which are time limited. *See* 26 U.S.C. § 5000A(e). As such, I cannot possibly infer that Congress viewed 3 months of non-compliance with the ACA as some inviolable threshold.

More importantly, the 2010 Congress's use of a tax penalty to incentivize individuals to purchase coverage within 3 months of a coverage lapse does not dictate the characteristics of the short-term coverage options that the 1996 Congress intended to be available to individuals who face such a lapse. The ACA's language "should be read in context, the statute's place in the overall statutory scheme should be considered, and the problem Congress sought to solve should be taken into account" to determine whether Congress has foreclosed the 2018 Rule. *PDK Labs., Inc.*, 362 F.3d at 796 (internal quotation marks omitted). If "courts addressing the meaning of a term in one context" should "refrain from any declaration as to its meaning elsewhere in the same statute," *Verizon Cal., Inc. v. FCC*, 555 F.3d 270, 276 (D.C. Cir. 2009), then surely I should be reluctant to interpret a word in accordance with the meaning given to the same word used

32

fourteen years later by a different Congress in a different statute contained in a different title of the U.S. Code.

For these reasons, I conclude that Congress has *not* unambiguously precluded the Departments' interpretation in the 2018 Rule.

## D. *Chevron* Step Two: Whether the Statutory Construction is Permitted

Under *Chevron* step two, I must determine whether the Departments' definition of STLDI is "based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843. Put another way, I must decide whether the 2018 Rule is "arbitrary or capricious in substance, or manifestly contrary to the statute." *Good Fortune Shipping SA*, 897 F.3d at 261 (quoting *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 53 (2011)). As in step one, this requires application of "the traditional tools of statutory interpretation, including reviewing the text, structure, and purpose of the statute." *Grace v. Whitaker*, 344 F.Supp.3d 96, 121 (D.D.C. 2018). The difference at this stage, however, is the "criteria"—i.e., whereas step one asked whether Congress "*require[d]* a certain interpretation," step two asks whether the same statutory text, history, and purpose "*permit* the interpretation chosen by the agency." *Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1049 (D.C. Cir. 1997) (emphases in original). "At bottom," my role is limited to deciding whether the Departments acted "within the scope of [their] lawful authority" and whether their actions are supported by "reasoned decisionmaking." *Tripoli Rocketry Ass'n v. ATF*, 437 F.3d 75, 77 (D.C. Cir. 2006) (internal quotation marks omitted). Because *Chevron* step two in this case is largely coextensive with arbitrary and capricious review, I will

address plaintiffs' claims under the two standards together unless otherwise noted. *See Agape Church, Inc. v. FCC*, 738 F.3d 397, 410 (D.C. Cir. 2013).

Although STLDI is ambiguous as a matter of law, to qualify as STLDI a policy must, of course, be both "short-term" and of a "limited duration." As Congress chose not to define these phrases, I must look to "their ordinary meaning." *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995); *cf. Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011) ("Because the statute does not define 'report,' we look first to the word's ordinary meaning."). As noted above, *see supra* at p.29, the two modifiers also should be given independent meaning to avoid redundancy or surplusage, which are "inconsistent with a court's duty to give meaning to each word used by Congress." *Nat. Res. Def. Council*, 489 F.3d at 1373; *see also Bailey v. United States*, 516 U.S. 137, 146 (1995) ("We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning."); *Sprietsma v. Mercury Marine*, 537 U.S. 51, 63 (2003) (interpreting word "law" broadly could render word "regulation" superfluous in preemption clause applicable to a state "law or regulation"). I will address the ordinary meaning of the two phrases in turn.

According to Merriam-Webster, the modifier "short-term" means "occurring over or involving a relatively short period of time." *Short-term*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/short-term (last visited July 18, 2019). The word "relatively" denotes a comparison. Applied here to STLDI, the insurance (the object being modified) must last for a "term" (a "period of time") that is "short" by comparison to another term. Assuming plaintiffs are correct that a standard health

34

insurance benefit period—typically one year—is the most appropriate reference point, *see* Pls.' Mot. for Summ. J. at 29, a plan with an initial term of less than one year constitutes "a relatively short period of time." Plaintiffs reject this reading as a hyper-literalist "tortur[ing of] the language," Pls.' Opp'n to Defs.' Mot. for Summ. J. at 22–23, but the Departments' construction is far from an outlier. Multiple states, the primary regulators of insurance, have adopted the same "less than 12 months" definition of "short-term,"[14] which, again, was the definition in place (and unchallenged) from 1997 to 2016. The Departments' effort in 2016 to amend STLDI to shore up the struggling Exchanges did not render its previous interpretation impermissible. Moreover, as the administrative record shows, the Departments expressly considered adopting an "initial contract term [that] was somewhat longer than less than 3 months," such as, "for example, less than 9 months." 83 Fed. Reg. at 38,218. The Departments decided against a 6- or 9-month limitation out of concern that a shorter term would be less effective in helping individuals maintain continuous coverage. *Id.* While plaintiffs may disagree with this policy objective, *see* Pls.' Mot for Summ. J. at 30–33, as explained *supra* at pages 30–31, it is not inconsistent with HIPAA. As such, I cannot conclude on this record that the 2018 Rule's definition of "short-term" is an impermissible statutory construction under *Chevron*'s second step.

As for the word "duration," that word obviously means "the time during which something exists or lasts." *Duration*, Merriam-Webster Online Dictionary,

---

[14] *See, e.g.*, S.D. Admin. R. 20:06:40:02 (defining STLDI as plans with "an expiration date specified in the contract that is within 12 months of the date the contract becomes effective"); 28 Tex. Admin. Code § 3.3002(18) (same).

https://www.merriam-webster.com/dictionary/duration (last visited July 18, 2019). Merriam-Webster unhelpfully defines "limited" as "confined within limits." *Limited*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/limited (last visited July 18, 2019). However, the Oxford English Dictionary defines "limited" as "circumscribed within definite limits, bounded, restricted." *Limited*, Oxford English Online Dictionary, https://www.oed.com/view/Entry/108491 (last visited July 18, 2019). The 2018 Rule permits renewals up to 36 months of total coverage. That construction is obviously consistent with the ordinary meaning of "limited duration," as "the time during which [the coverage] exists or lasts" is "circumscribed within definite limits" and "restricted" to 36 months. And, of course, it must be remembered that from 1997 to 2016 the Departments permitted *unlimited* issuer-consented renewals. Thus, the 2018 Rule constitutes the *most onerous* interpretation of "limited duration" in the phrase's history, at least as applied to the "healthy individuals" who previously could secure issuer-consented renewals and who plaintiffs now fear will exploit renewals to avoid the ACA-compliant market, *see* Pls.' Mot. for Summ. J. at 37. Now that is hardly an impermissible construction.

This leaves plaintiffs' statutory structure and purpose arguments. "Whether an agency's construction is reasonable depends, in part, 'on the construction's 'fit' with the statutory language, as well as its conformity to statutory purposes.'" *Good Fortune Shipping SA*, 897 F.3d at 262 (quoting *Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006)). For the same reasons that HIPAA's structure and purpose do not preclude the 2018 Rule, *see supra* at pp.30–31, the Rule permissibly construes HIPAA in a manner that fits

36

within the law's statutory scheme and conforms to its purposes. Relevant here, HIPAA was enacted "to improve portability and continuity of health insurance coverage in the group and individual markets." Pub. L. No. 104-191 pmbl. The law accomplished these purposes in part through coverage and preexisting condition protections, the availability of which was contingent on a person's prior "creditable coverage." As such, it was reasonable for the Departments to extend STLDI's initial term to twelve months, as under HIPAA's scheme that would have (1) helped individuals more easily maintain an uninterrupted period of prior "creditable coverage" to become eligible for the law's protections (and avoid the "significant break in coverage" that could negate eligibility), and (2) in some cases, reduced the period during which a new issuer could refuse benefits to a participant relating to preexisting conditions. As STLDI plans typically lack preexisting condition protections, it is not hard to imagine situations where an individual who developed a medical condition while covered by STLDI—and thus was at risk of losing coverage— would be better positioned to access HIPAA's protections if their STLDI coverage lasted up to a year rather than three months. The Departments' interpretation therefore "is reasonable in light of [HIPAA's] language, legislative history, and policies." *Nat. Res. Def. Council, Inc. v. EPA*, 822 F.2d 104, 111 (D.C. Cir. 1987).

With respect to the ACA, plaintiffs contend that the 2018 Rule unreasonably interprets STLDI considering the ACA's interlocking reforms to the individual health insurance market—namely, the guaranteed issue, community rating, and essential health benefits provisions as well as the single risk pool. *See* Pls.' Mot. for Summ. J. at 20. I disagree. Plaintiffs' view that the ACA's scheme made sacrosanct a specific, narrow

37

definition of STLDI unfortunately "manifests an interpretive error of long standing"; "a statute's primary or precipitating object" is not necessarily "its sole object." *Albany Eng. Corp. v. FERC*, 548 F.3d 1071, 1076 (D.C. Cir. 2008). Indeed, as the Supreme Court itself has recognized, "no legislation pursues its purposes at all costs," and "it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987). Here, the ACA "manifest[s] a deliberate congressional decision to balance the goal of" fostering robust ACA-compliant individual health insurance markets with the reality that not all individual plans can or should be subjected to the ACA's requirements. *Albany Eng. Corp.*, 548 F.3d at 1076; *cf. East Bay Mun. Util. Dist. v. U.S. Dep't of Commerce*, 142 F.3d 479, 484 (D.C. Cir. 1998) (recognizing statutory balance between using federal government's vast resources for clean-up costs and fact that "in some situations the statute explicitly calls for reimbursement of the United States for clean-up costs it incurs, making clear the presence of additional purposes" (citation omitted)).

It is not my role to interfere with or disrupt the balance struck by policymakers where, as here, there is no indication that those charged with implementing the balance have failed to observe it. To be sure, the ACA's various reforms are interdependent and were designed to work together as features of the individual Exchange markets. However, Congress clearly did *not* intend for the law to apply to all species of individual health insurance. In addition to maintaining the STLDI exemption, Congress exempted multiple forms of individual health insurance from the ACA's reforms and the State-specific risk

pools.[15] In other words, lawmakers were not rigidly pursuing the ACA-compliant market at all costs, e.g., at the risk of individuals going without insurance altogether. Moreover, while Congress certainly sought to foster a robust ACA-compliant market, its chosen methods for doing so were embodied by the individual mandate and tax penalty, *not* the definition of STLDI ! Congress has since functionally eliminated those mechanisms, which, as the ACA itself predicted, would result in "some individuals . . . mak[ing] an economic and financial decision to forego health insurance coverage." 42 U.S.C. § 18091(2)(A); *see also King*, 135 S.Ct. at 2486 ("Congress found that the guaranteed issue and community rating requirements would not work without the [individual responsibility] requirement."). That is now the state of play, and nothing in the ACA persuades me that the Departments were not free to adjust to that reality.[16]

---

[15] *See, e.g.*, 42 U.S.C. § 18011 (exempting pre-ACA "grandfathered plans"); *id.* § 18118 (exempting student health insurance plans). The ACA's expansion of Medicaid eligibility also illustrates Congress's openness to individuals seeking coverage outside of the ACA-compliant individual markets. *See* ACA, Pub. L. No. 111-148, §§ 1421, 1511–1513, 2001. Indeed, the Departments have submitted evidence indicating that the aggregate number of individuals insured outside of the ACA-compliant individual market far surpasses the number of individuals within it. *See* Wu Decl. ¶ 8.

[16] Plaintiffs also contend that the 2018 Rule is arbitrary and capricious because the Departments failed (1) to provide a reasoned explanation for the change from the 2016 Rule, and (2) to consider that the 2018 Rule would cause coverage gaps for many consumers. Pls.' Mot. for Summ. J. at 37–44. As to the former, the Departments clearly did provide a reasoned basis for departing from the 2016 Rule, including that the 2016 Rule was not successful in stabilizing the Exchanges and that the 2018 Rule's definition of STLDI was consistent with prior rulemakings. *See* 83 Fed. Reg. at 38,214–17, 38,220, 38,227–28; *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (agencies may depart from prior interpretations so long as "the new policy is permissible under the statute, . . . there are good reasons for it, and . . . the agency *believes* it to be better"). As to the latter, the Departments expressly addressed coverage gaps and concluded that the 2018

## CONCLUSION

Thus, for all of the foregoing reasons, the Departments' motion for summary judgment is **GRANTED**, and plaintiffs' motion for summary judgment is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued herewith.

RICHARD J. LEON
United States District Judge

---

Rule would provide greater gap protection to consumers than the 2016 Rule. 83 Fed. Reg. at 38,218.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ASSOCIATION FOR COMMUNITY AFFILIATED PLANS, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF TREASURY, *et al.*, | ) ) ) | Civil Case No. 18-2133 (RJL) |
| Defendants. | ) ) ) | |

**ORDER**
(July 18, 2019) [Dkt. ## 39, 40]

**FILED**

**JUL 19 2019**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that plaintiffs' Motion for Summary Judgment [Dkt. # 39] is **DENIED**

and defendants' Motion for Summary Judgment [Dkt. # 40] is **GRANTED**.

**SO ORDERED.**

RICHARD J. LEON
United States District Judge